In re **SMITH & WESSON,**
etc., Petitioner.

No. 84–1992.

United States Court of Appeals,
First Circuit.

Heard Jan. 9, 1985.

Decided March 20, 1985.

Charles E. Raley, Israel & Raley, Washington, D.C., Martin O'Donnel, Steven J. Henry, Cesari & McKenna, Boston, Mass., for petitioner.

C. Brian McDonald, Asst. U.S. Atty., and William F. Weld, U.S. Atty., Boston, Mass., for respondent.

Before COFFIN, BOWNES and TORRU-ELLA, Circuit Judges.

TORRUELLA, Circuit Judge.

In essence, this case presents two principal issues to be decided on appeal: (1) Whether the district courts have jurisdiction of pre-contract claims against an agency of the United States after the enactment of the Federal Court Improvements Act of 1982 (FCIA),[1] and (2) in the event such jurisdiction exists, whether mandamus is an appropriate remedy to review the refusal of a district court to assume jurisdiction over such a controversy.

The facts, which for purposes of this appeal we will assume to be true, are as follows:

On November 9, 1983 the Army issued a Request for Test Samples (RFTS), seeking the submission of weapon samples and supporting materials in a "test package" on or before January 31, 1984. The request stated that samples would be tested and evaluated to determine their conformance to certain personal defense weapon "characteristics" described more fully in attachments issued with the request itself. This evaluation was motivated by the anticipated authorization for the letting of contracts to supply approximately 300,000 handguns to the Army over a 5-year period.[2] The request stated that a failure to meet the requirements of the stated "characteristics" would result in exclusion from participation in any follow-on procurement.

---

1. Pub.L. 97–164, the relevant part of which is codified at 28 U.S.C. § 1491(a)(3). This section of Chapter 91—United States Claims Court—contains the following:

   (3) To afford complete relief of any contract claim brought before the contract is awarded, the court shall have exclusive jurisdiction to grant declaratory judgments and such equitable and extraordinary relief as it deems proper, including but not limited to injunctive relief. In exercising this jurisdiction, the court shall give due regard to the interests of national defense and national security.

2. The RFTS expressly stated that there was no authority or funding for any procurement, although the unilaterally determined covert testing results would be used to identify those who would then be allowed to compete if any procurement was issued.

Plaintiff submitted its test package within the time limit. It included thirty sample pistols and two firing pin adapters.

The Army conducted a conference for interested parties at which the procedures for preliminary testing were set forth. On May 8, 1984 additional documentation was issued by the Army to Smith & Wesson. Petitioner alleges that the documentation at this date indicated that its weapons were still under consideration.

On September 18, 1984, the Army issued a letter indicating that the tests were nearing completion but that Smith & Wesson would be excluded from further participation in the testing on the ground that the handguns had failed the tests for firing pin energy and service life.

The petitioner, contending that the Army's action in excluding it from further consideration for procurement contracts to be issued was in violation of procedures, duties and obligations with which the Army was required to comply, proceeded to file a civil suit in the United States District Court for the District of Massachusetts contesting the Army's conduct.[3] Thereafter, the district court transferred the action to the United States Claims Court on the grounds that the jurisdiction of the district court had been divested by virtue of 28 U.S.C. § 1491(a)(3), and this appeal ensued. The merits of the dispute which Smith & Wesson seeks to litigate before the district court are not before us, but rather, as previously indicated, the appellate controversy is limited to determining the scope of the district court's jurisdiction and whether mandamus lies to enforce the same.

## I. The nature of the controversy

■ In an effort to completely avoid the issue of jurisdiction under § 1491(a)(3), Smith & Wesson rejects the characterization of its suit as a "pre-award contract claim." Petitioner instead alleges that its challenge is one based on the Army's arbitrary action in barring petitioner from com-petition for future procurement of pistols. It is obvious that Smith & Wesson seeks to so label this controversy, because it is well-settled that there is standing to seek judicial review of agency action in the district courts under Section 10 of the Administrative Procedure Act [5 U.S.C. § 706(2)(A) ], when arbitrary or capricious agency conduct is claimed. *See Chrysler Corp. v. Brown,* 441 U.S. 281, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1978).

However, not only do various points in Smith & Wesson's petition belie the characterization it so vehemently denies (*see* Pages 2, 4 of its Petition), but the plain language of § 1491(a)(3) ("any contract claim brought before the contract is awarded") would appear to be clearly descriptive of the controversy presented to the court below in the suit filed by Smith & Wesson, *i.e.* a dispute concerning the actions or inactions of an agency occurring prior to the award of a contract, and the questions raised thereby regarding the rights of the parties to such dispute.

We thus regard the action below as a pre-award contract claim within the meaning of § 1491(a)(3).

## II. The jurisdiction of the district courts under the FCIA

Although the express language of § 1491(a)(3) would appear to divest the district courts of jurisdiction of pre-award contract claims, the courts are divided on this issue. *See Opal Manufacturing Co. v. U.M.C. Industries, Inc.,* 553 F.Supp. 131 (D.D.C.1982) (no jurisdiction in district courts); *accord, B.K. Investments v. United States,* 715 F.2d 713, 715 n. 4 (dictum) (2nd Cir.1983). *Cf., Coco Bros., Inc. v. Pierce,* 741 F.2d 675 (3rd Cir.1984) (there is jurisdiction), *United States v. John C. Grimberg,* 702 F.2d 1362, 1369–72 (Fed.Cir. 1983) (there is jurisdiction).

Relying solely on the literal language of section 1491(a)(3), the District Court for the

---

3. *Smith & Wesson v. The United States and John O. Marsh, Jr., Secretary of the Army,* Civil Action

No. 84–0390–F.

District of Columbia held, in *Opal Manufacturing Co., supra,* that "the FCIA must be read to vest jurisdiction in the Claims Court for pre-award contract claims, *to the exclusion of this Court.*" (Emphasis added). This position, based upon the interpretation of the word "exclusive" as applying to any and all other courts was, however, rejected by the Third Circuit Court of Appeals. In *Coco Bros., Inc., supra,* the Third Circuit found that construction plausible but erroneous by reason of the legislative history of the statute in question.

The legislative history explaining the grant of equitable powers to the Claims Court was reviewed in *John C. Grimberg, supra.* As summarized in *Coco Bros., Inc., supra,* at 678, it explained:

> In an early version of the proposed legislation, the Claims Court was to be given equitable power in all cases brought before it. *See* S. 21, 97th Cong., 1st Sess. § 132(a)(2) (1981); H.R. 2405, 97th Cong., 1st Sess. § 126(d) (1981). However, because of strenuous objections by the Justice Department, that provision was changed to limit the grant to pre-award contract cases. The Federal Circuit Court, although not presented with the issue of pre-award jurisdiction, commented that it could find no indication that Congress intended to take away the district court's power to act in those cases.

Observations by the House Judiciary Committee regarding the grant of equitable power to the Claims Court include a statement to the effect that: "This enlarged authority is exclusive of the Board of Contract Appeals and *not to the exclusion of the district court.*" (Emphasis supplied). H.R.Rep. No. 312, 97th Cong., 1st Sess. 43 (1981). That exclusion of the district courts was not contemplated is further emphasized in that report where it states:

> It is not the intent of the Committee to change existing case law as to the ability of the parties to proceed in the district court pursuant to the provisions of the Administrative Procedure Act in instanc-

es of illegal agency action.... Nor is it the intent of the Committee to obligate lawyers, litigants, and possibly witnesses to travel to Washington, D.C., whenever equitable relief is sought in a contact (sic) action prior to award. Although Claims Court judges will travel, they cannot be expected to do so at (sic) extremely short notice. Therefore, for the time being, the Committee is satisfed (sic) by clothing the Claim Court with enlarged equitable powers *not to the exclusion of the district courts. The dual questions of whether these powers should be even broader and of whether they should be exclusive of the district courts will have to wait for a later date.*

*Id.* (Emphasis added).

The Senate Report supports the House report in its assertion that under Section 1491(a)(3) there is no change in the jurisdiction of the district courts:

> By conferring jurisdiction upon the Claims Court to award injunctive relief in the pre-award stage of the procurement process, the Committee does not alter the current state of the substantive law in this area. Specifically, the Scanwell doctrine as enunciated by the D.C. Circuit Court of Appeals in 1970 is left in tact (sic). *See Scanwell Laboratories, Inc. v. Shaffer,* 424 F.2d 859 (D.C.Cir.1970)....

> Since the court is granted jurisdiction in this area boards of contract appeals would not possesses comparable authority pursuant to the last sentence of section 8(d) of the Contract Disputes Act.

S.Rep. No. 275, 97th Cong., 1st Sess. 23, *reprinted in* 1982 U.S.Code Cong. and Admin.News 11, 33.

We are well aware that in going behind the apparently plain language of § 1491(a)(3) we seem to be violating a cardinal principal of legislative interpretation. *See T.V.A. v. Hill,* 437 U.S. 153, 184 n. 29, 98 S.Ct. 2279, 2296 n. 29, 57 L.Ed.2d 117 (1978). Yet this rule is not without exceptions. In our recent opinion in *Cia. Petrolera Caribe, Inc. v. Arco Caribbean, Inc., et al.,* 754 F.2d 404 at 415 (1st Cir., 1985), we made reference to such an exception:

If the statutory language is unambiguous, *in the absence of "a clearly expressed legislative intent to the contrary,* that language must ordinarily be regarded as conclusive."

[Emphasis added]. *See also Consumer Product Safety Commission v. GTE Sylvania Corp.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); *Russello v. United States,* 464 U.S. 16, ——, 104 S.Ct. 296, 299, 78 L.Ed.2d 17 (1983); *United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981). As previously indicated, the legislative history of § 1491(a)(3) puts FCIA squarely within this exception.

In the case at bar, giving credence to the asserted "plain meaning" of Section 1491(a)(3) deprives the district court of its heretofore jurisdiction by implication rather than by specific pronouncement of Congress.[4] For this reason we believe that in this case scrutiny of the legislative history is appropriate.

■ We should point out that in *TVA,* notwithstanding the plain statutory language, the Supreme Court, did undertake an historical analysis of the act in question. In that case the plain language of the Endangered Species Act required the permanent halting of a virtually completed dam for which Congress had expended more than $100 million. *See TVA, supra,* 437 U.S. at 172–173, 98 S.Ct. at 2290–2291. As it turned out the legislative history supported the statute's explicit provisions. In this case, unlike *TVA,* our search has yielded an entirely opposite purpose and intent. Here, a facial reading of the language in Section 1491(a)(3) leads one to a result never intended by Congress. *Coco Bros., Inc., supra,* at 679. We, therefore, conclude that 28 U.S.C. § 1491(a)(3) did not divest the district courts of jurisdiction in pre-award contract claims.

4. Where Congress has intended to deprive the district courts of jurisdiction it has so indicated in no uncertain words. *See* 28 U.S.C. § 1346(a)(2):

    ... except that the district courts shall not have jurisdiction of any civil action or claim

### III. *Mandamus*

■ It is axiomatic that mandamus lies to a subordinate court to compel that court to take jurisdiction of a case properly before it or to compel it to proceed in the due exercise of its jurisdiction where it has refused to proceed. *Marbury v. Madison,* 1 Cranch 137, 5 U.S. 137, 2 L.Ed. 60 (1803). *See also Thermtron Products Inc. v. Hermansdorfer,* 423 U.S. 336, 352, 96 S.Ct. 584, 593, 46 L.Ed.2d 542 (1975); *Will v. United States,* 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305 (1967); *Acton Corp. v. Borden, Inc.,* 670 F.2d 377, 383 (1st Cir.1982).

■ It having been established that Smith & Wesson's right to issuance of the writ is "clear and indisputable," *Acton Corp.,* 670 F.2d at 382, *a writ of mandamus shall issue ordering the district court to recall the case in question and restore it to the docket.*

*It is so ordered.*

■

against the United States founded upon any express or implied contract with the United States or for liquidated or unliquidated damages in cases not sounding in tort which are subject to sections 8(g)(1) and 10(a)(1) of the Contract Disputes Acts.