ULSTEIN MARITIME, LTD. and
Schottel of America, Inc.,
Plaintiffs, Appellees,

v.

UNITED STATES of America, et al.,
Defendants, Appellants.

No. 86–2127.

United States Court of Appeals,
First Circuit.

June 4, 1987.

Decided Nov. 25, 1987.

with whom David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., Dept. of Justice, Richard K. Willard, Asst. Atty. Gen., Washington, D.C., and Lincoln C. Almond, U.S. Atty., Providence, R.I., were on brief, for defendants, appellants.

Joseph A. Artabane with whom Charles S. Kirwan and Spriggs, Bode & Hollingsworth, Washington, D.C., were on brief, for plaintiffs, appellees.

Before COFFIN, DAVIS * and SELYA, Circuit Judges.

DAVIS, Circuit Judge.

This is an appeal from an order of the United States District Court for the District of Rhode Island invalidating a certificate of competency issued by the Small Business Administration (SBA), by which the SBA had certified the responsibility of a low bidder for a contract to manufacture marine thruster units for the Navy. The district court ordered the Navy to award the contract to the next low, responsive and responsible bidder. The Government has appealed, arguing that the relief granted by the district court is equivalent to an injunction against the SBA, and that injunctive relief against that agency is barred by 15 U.S.C. § 634(b)(1). The Government also says that the district court lacked the authority to order the Navy to award the contract to the next low, responsive and responsible bidder. Because we find that the district court has the authority to grant the remedies it imposed, we affirm.

I.

In December 1985 the Naval Engineering and Facilities Command (NAVFAC) issued an invitation for bids for six marine thruster units. The low bidder was Thrustmaster Marine, Inc. (TMI), a Florida corporation. The Navy determined that the bid by TMI met the formal requirements of the invitation for bids and thus was "responsive" within the meaning of 48 C.F.R. § 14.301. Since the Navy had not previously dealt with TMI, the bid was referred

Helene M. Goldberg, Commercial Litigation Branch, Civ. Div., Dept. of Justice,

* Of the Federal Circuit, sitting by designation.

to the Defense Contract Administration Services (DCAS) to determine whether TMI would be capable of performing the contract if its bid was accepted. Meanwhile, appellees Schottel and Ulstein, the third and fourth lowest bidders on the contract, filed bid protests with the Navy pursuant to 48 C.F.R. § 33.103 (1985), alleging, among other grounds, that TMI lacked the manufacturing capability to fulfill the contract.

Following its investigation, DCAS decided that TMI was not a "responsible" bidder (as defined by 48 C.F.R. § 9.104–1 (1985)) in that it did not have adequate production capability. DCAS found that TMI was basically a one-man operation which lacked the equipment, personnel or facilities to perform the final end item assembly, and that TMI thus failed to qualify as a "manufacturer" as required by the Walsh–Healey Act, 41 U.S.C. § 35(a). *See* 41 C.F.R. § 50–206.51. DCAS therefore recommended that the contract should not be awarded to TMI.

Since TMI had certified that it was a small business, the Navy referred its file on TMI to the SBA pursuant to 48 C.F.R. § 9.104–3(e) (1985). Under 15 U.S.C. § 637(b)(7)(A) (1982), a Government procurement officer may not exclude a small business from being awarded a contract because of a lack of responsibility without referring the matter to the SBA for a final disposition. "In any case in which a small business concern ... has been certified by the [SBA] ... to be a responsible or eligible Government contractor as to a specific Government contract, the officers of the Government having procurement ... powers are directed to accept such certification as conclusive, and shall let such Government contract to such concern ... without requiring it to meet any other requirement of responsibility or eligibility." 15 U.S.C. § 637(b)(7)(C). After its own investigation, the SBA issued a certificate of competency to TMI. The Navy was then obligated under § 637(b)(7)(C) to award the contract to TMI, which it did on May 7, 1986.

Ulstein and Schottel were notified that their protests had been denied and that the contract was being let to TMI. They immediately sued in the district court seeking declaratory and injunctive relief to prevent performance by TMI. After a trial on the merits, the district court set aside the certificate of competency issued by the SBA and remanded the matter to the Navy for consideration of the next low, responsible bid. *Ulstein Maritime, Ltd. v. United States*, 646 F.Supp. 720 (D.R.I.1986).

The court based its authority on the power granted in the Administrative Procedure Act (APA) to the district courts to review and overturn federal administrative actions that are arbitrary and capricious, an abuse of discretion, or reflect a failure to comply with applicable laws or regulations. 5 U.S.C. § 706(2)(A). When the review concerns Government procurement contracts, a "disappointed bidder on a government contract must show that the decision by the government agency either had no rational basis or involved a clear and prejudicial violation of applicable statutes or regulations." *Smith & Wesson v. United States*, 782 F.2d 1074, 1078 (1st Cir.1986). The trial court found two such violations in the handling of the TMI bid that justified setting aside the award to TMI. First, the Navy made no assessment of whether the TMI bid complied with the Standard Commercial Products Clause in the invitation for bids. The SBA did consider that clause to some extent, but the judge found that this evaluation was so cursory that it did not comply with the applicable regulations. *Ulstein Maritime*, 646 F.Supp. at 736–37. Second, the SBA ignored mandatory regulations in its handling of the question of whether TMI complied with the requirements of the Walsh–Healey Public Contracts Act, 41 U.S.C. §§ 35–45. "The Small Business Administration is bound by the regulations and interpretations of the Department of Labor in making its determinations of eligibility under the [Walsh–Healey] Act." 41 C.F.R. § 50–201.101(b)(6)(i)(C)(2). The court ruled that the SBA had ignored these regulations in order to conclude that TMI qualified as a "manufacturer or regular dealer." *Ulstein Maritime*, 646 F.Supp. at 737–41. In sum, the court ruled that the SBA had illegally

waived compliance with the applicable Department of Labor regulations.

Having determined that the certificate of competency was issued illegally, the trial judge declared it to be invalid, and ordered the Navy to set aside both the certificate of competency and the contract award to TMI. The court ordered NAVFAC to review the bids previously received and to award the contract to the next low, responsive and responsible bidder. The Government moved to amend the order to substitute instead a new bid solicitation and to permit TMI to receive fresh consideration along with all other bidders. This motion was denied. The court also rejected the Government's contention that the remaining bids had expired during the course of litigation, noting that the expiration period on public contract solicitations is for the benefit of the bidders who have the option of waiving this protection. *International Graphics v. United States*, 4 Cl.Ct. 515, 519–21 (1984).

The Government has appealed on two grounds. One is that the declaratory judgment invalidating the SBA's certificate of competency, coupled with the orders to the Navy to disregard the invalid certificate of competency and to set aside the contract award to TMI, are equivalent to an injunction against the SBA, and that such an injunction is forbidden by 15 U.S.C. § 634(b)(1). The other is that the district court lacked the authority to order the Navy to review the bids previously considered and to award the contract to the next low, responsive and responsible bidder.

## II.

The only injunction issued by the district court was directed against the Navy. The government argues, however, that invalidating a certificate of competency is the functional equivalent of an injunction against the SBA. The reasoning is that the declaratory judgment, when linked to the injunction directing the Navy to disregard the invalid certificate of competency and to set aside the contract award, would have the same practical effect as an injunction preventing the SBA from enforcing its decision. It is said, therefore, that the plaintiffs would thus indirectly gain what the court could not directly grant.

This analysis need not be accepted. Injunctions and declaratory judgments are different remedies. An injunction is a coercive order by a court directing a party to do or refrain from doing something, and applies to future actions. A declaratory judgment states the existing legal rights in a controversy, but does not, in itself, coerce any party or enjoin any future action. Courts have on occasion refused to grant declaratory relief in cases where the effect would be identical to a legally impermissible injunction. *Great Lakes Co. v. Huffman*, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943); *Samuels v. Mackell*, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971). But a declaratory judgment is a milder remedy which is frequently available in situations where an injunction is unavailable or inappropriate. *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). Thus, even courts that have accepted the view that the SBA is immune from injunction have held that declaratory relief against the SBA is not synonymous with an injunction. *Valley Constr. Co. v. Marsh*, 714 F.2d 26, 29 (5th Cir.1983); *Mar v. Kleppe*, 520 F.2d 867 (10th Cir.1975); *Lloyd Wood Constr. Co. v. Sandoval*, 318 F.Supp. 1167 (N.D.Ala.1970), *rev'd on other grounds sub nom. Campbell Co. v. Lloyd Wood Constr. Co.*, 446 F.2d 261 (5th Cir.1971). Judicial rulings have permitted suits for declaratory relief directed against the SBA even though this relief affects the award, performance or payment on a contract by another agency. *Mar v. Kleppe*, 520 F.2d at 869; *P & B Servs., Inc. v. Cardenas*, 525 F.Supp. 1289 (D.D.C.1981); *Claxton v. SBA*, 525 F.Supp. 777, 785–86 (S.D.Ga.1981). Furthermore, the Walsh–Healey Act expressly provides that determinations whether an entity is a "manufacturer," an issue in this case, are subject to judicial review. 41 U.S.C. § 43a(c). To construe § 634(b)(1) so as to foreclose even declaratory relief would render that provision meaningless.

The setting aside of an improperly issued certificate of competency by a reviewing court does not, as the government says, "enjoin the effectiveness" of the SBA. It does not prevent the SBA from taking any actions which it can legally take. To accept the government's argument would mean that the SBA would be virtually immune from any judicial review, since practically any specific remedy (except pure money damages) can be recharacterized as equivalent, at least indirectly, to some sort of injunction.

### III.

■ Even if the order of the district court against SBA is interpreted as equivalent to an injunction, 15 U.S.C. § 634(b)(1) does not bar judicial review of the actions of the SBA in this case. Section 634(b)(1) is part of the enabling statute creating the SBA which sets forth its general powers. Section 634(b) states:

> In the performance of, and with respect to, the functions, powers, and duties vested in him by this chapter the Administrator [of the Small Business Administration] may
>
> (1) sue and be sued in any court of record of a State having general jurisdiction, or in any United States district court, and jurisdiction is conferred upon such district court to determine such controversies without regard to the amount in controversy; but *no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Administrator or his property* . . . . [Emphasis added.]

The reach of this limitation on "attachment, injunction, garnishment, or other similar process" is a prime issue in the current case.

■ A. The bare language facially suggests that "no . . . injunction" can be directed at the SBA. Some courts have read the wording in this way, and concluded that all injunctive relief directed at the SBA is absolutely prohibited. *E.g., Valley Constr. Co. v. Marsh*, 714 F.2d at 29; *Little v. United States*, 489 F.Supp. 1012, 1016 (C.D.Ill.1980), *aff'd*, 645 F.2d 77 (7th Cir.

1981); *Mar v. Kleppe*, 520 F.2d at 869; *Romeo v. United States*, 462 F.2d 1036, 1038 (5th Cir.), *cert. denied*, 410 U.S. 928, 93 S.Ct. 1361, 35 L.Ed.2d 589 (1973); *Expedient Servs., Inc. v. Weaver*, 614 F.2d 56 (5th Cir.1980); *Jets Servs., Inc. v. Hoffman*, 420 F.Supp. 1300, 1308–09 (M.D.Fla. 1976). However, other courts have found that § 634(b)(1) does not bar injunctions in all circumstances. *Cavalier Clothes v. United States*, 810 F.2d 1108, 1112 (Fed. Cir.1987); *Oklahoma Aerotronics v. United States*, 661 F.2d 976, 977 (D.C.Cir.1981); *Related Indus. v. United States*, 2 Cl.Ct. 517, 522 (1983). *See also Dubrow v. Small Business Admin.*, 345 F.Supp. 4, 7 (D.Cal. 1972); *Simpkins v. Davidson*, 302 F.Supp. 456, 458 (S.D.N.Y.1969).

The meaning of the limitation on the waiver of immunity in § 634(b)(1) was analyzed in *Cavalier Clothes*, 810 F.2d at 1108. There the court reviewed and endorsed the careful analysis of the legislative history of § 634(b)(1) in *Related Industries*, 2 Cl.Ct. at 522–23. The origin and purpose of the language in § 634(b)(1) goes back to the decision in *FHA v. Burr*, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940), which held that when Congress established an agency that was authorized to engage in business transactions and permitted it to "sue and be sued" (as is true of the SBA), this waiver extended to all civil processes incident to suit such as garnishment and attachment of the agency's assets. Therefore, language such as that in § 634(b)(1) was added to enabling statutes to bar the attachment of agency funds and other interference with agency functioning. The same boilerplate language is found repeatedly in statutes establishing agencies that provide loans or funds to the public, *e.g.*, 7 U.S.C. § 1506(d) (Federal Crop Insurance Corporation); 15 U.S.C. § 714b(c) (Commodity Credit Corporation); 42 U.S.C. § 3211(11) (Secretary of Commerce). *See Related Industries*, 2 Cl.Ct. at 522 n. 2. While the specific legislative history of § 634(b)(1) is silent on the purpose of this language, the legislative history of earlier statutes containing the identical wording indicates that it was intended to keep credi-

tors or others suing the government from hindering and obstructing agency operations through mechanisms such as attachment of funds. "[N]othing in the language or the legislative history of § 634 suggests that Congress intended to grant the SBA any greater immunity from injunctive relief than that possessed by other governmental agencies." *Cavalier Clothes*, 810 F.2d at 1112. "Rather, it merely intended to insure that the SBA be treated the same as any other government agency in this respect." *Related Industries*, 2 Cl.Ct. at 522. The no-injunction language protects the agency from interference with its internal workings by judicial orders attaching agency funds, etc., but does not provide blanket immunity from every type of injunction. In particular, it should not be interpreted as a bar to judicial review of agency actions that exceed agency authority where the remedies would not interfere with internal agency operations.

Language comparable to § 634(b)(1) is found in the enabling legislation creating the Commodity Credit Corporation (CCC). 15 U.S.C. § 714b(c). As with § 634(b)(1), some courts have interpreted this language as conferring absolute immunity against any kind of injunction relating to the CCC, *e.g., Stroud v. Benson*, 254 F.2d 448, 450 (4th Cir.1958); *Moon v. Freeman*, 245 F.Supp. 837, 839 n. 3 (E.D.Wash.1965). But the modern trend is to recognize injunctive relief in some situations. For example, in *State of Iowa ex rel. Miller v. Block*, 771 F.2d 347 (8th Cir.1985), the court concluded that it could not order the Secretary of Agriculture to implement certain disaster relief programs administered through the CCC. Nevertheless, it could review agency inaction and compel the Secretary to develop and promulgate regulations for the Special Disaster Payment Program, even though this would have the effect of forcing the Secretary to implement that program. Similarly, in *Hall v. Lyng*, 828 F.2d 428 (8th Cir.1987), the court issued a declaratory judgment that the Secretary had misinterpreted eligibility requirements for mandatory disaster payments under the 1981 Agriculture Act. As a result, certain farmers would be entitled to mandatory disaster relief payments which would be issued through the CCC. The court did not issue a writ of mandamus to compel the Secretary to make the payments, but implied that it could do so if he refused to comply with the judgment of the court. *Hall v. Lyng*, 828 F.2d at 436. *See also Mitchell v. Block*, 551 F.Supp. 1011, 1015–16 (W.D.Va.1982). Declaratory judgments reversing illegal actions by the CCC have been granted without any concern that the effect might be indirectly equivalent to an injunction, *e.g., Gonzalez v. Freeman*, 334 F.2d 570 (D.C.Cir.1964).

■■■ B. Disappointed bidders for government contracts may seek judicial review under the Administrative Procedure Act, 5 U.S.C. § 706(2). When the actions of contracting officials violate the statutes and regulations governing such contracts, the award may be set aside. *Scanwell Laboratories, Inc. v. Shaffer*, 424 F.2d 859 (D.C.Cir.1970). This circuit has followed *Scanwell* in recognizing the right of disappointed bidders to seek judicial review of Government procurement actions by filing suits in the district courts, *In re Smith & Wesson*, 757 F.2d 431 (1st Cir.1985), as have other circuits, *e.g., B.K. Instrument v. United States*, 715 F.2d 713, 720 (2nd Cir.1983). The legislative history shows that when Congress passed the Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, 96 Stat. 25 (1982), Congress explicitly endorsed the *Scanwell* doctrine that disappointed bidders for Government contracts can obtain judicial review in the district courts, and that the district courts can provide equitable relief from illegalities in the federal procurement process. *In re Smith & Wesson*, 757 F.2d at 433–35; *B.K. Instruments*, 715 F.2d at 721–23; *United States v. John C. Grimberg Co.*, 702 F.2d 1362, 1374–76 (Fed.Cir.1983).

■■■ The Federal Courts Improvement Act also gave the Claims Court power, which its predecessor lacked, to grant equitable relief, including injunctive relief, in contract claims brought before the contract was awarded. 28 U.S.C. § 1491(a)(3). This grant of equitable jurisdiction to the Claims Court was intended to enlarge the powers

of that court, but not to alter the preexisting equitable powers of the district courts. *In re Smith & Wesson,* 757 F.2d at 434; *John C. Grimberg,* 702 F.2d at 1376. The result is that the Claims Court and the district courts have equal, concurrent power to award injunctive relief in pre-award contract cases, while the district courts have exclusive jurisdiction to award injunctive relief in post-award contract cases. *United States v. John C. Grimberg Co.,* 702 F.2d at 1374–77. If 15 U.S.C. § 634(b)(1) is viewed as precluding any sort of injunction by the district courts directed at the SBA, then an irrational anomaly is created. The Claims Court can review actions by the SBA and grant injunctive relief where necessary. *Cavalier Clothes,* 810 F.2d at 1108. Yet the district courts, with the same jurisdiction in pre-award cases and sole jurisdiction in post-award cases, would be unable to grant any such relief. This situation would encourage every bidder whose bid might conceivably be frustrated by illegal acts of the SBA to file preemptive pre-award litigation in the Claims Court in order to preserve the right to effective judicial review.

■ The Government has urged that the Claims Court has power to enjoin the SBA solely because 28 U.S.C. § 1491(a)(3) was passed later than 15 U.S.C. § 634(b)(1) and thus supersedes it. This distinction makes no sense in light of the Congressional understanding at the time § 1491(a)(3) was passed that the district courts already had equitable jurisdiction in contract disputes as a result of *Scanwell* and its progeny and in view of the expressed Congressional intent to keep these powers intact. If the analysis of § 634(b)(1) in *Related Industries* and *Cavalier Clothes* is correct, and we believe that it is, then the district courts as well as the Claims Court have the power to review actions of the SBA and issue injunctive relief as required. If therefore the order of the district court is viewed as an indirect injunction against the SBA, then the district court still acted within its jurisdiction in granting the relief that it fashioned.

## IV.

■ The district court also instructed the Navy to review the bids that had been received and to award the contract to the next low, responsive and responsible bidder. The Government makes the point that the discretion whether to award a contract must rest with the contracting executive agency, and that a district court has no authority to direct the award of a contract to a particular bidder. *Delta Data Systems Corp. v. Webster,* 744 F.2d 197, 204 (D.C.Cir.1984); *Scanwell Laboratories,* 424 F.2d at 869. Although "the ultimate grant of a government contract must be left to the discretion of the government agency," *Delta Data Sys.,* 744 F.2d at 204, a court may order that a contract be awarded when "it is clear that, but for the illegal behavior of the agency, the contract would have been awarded to the party asking the court to order the award." *Id.* The trial court found here that, but for the illegal violations of applicable statutes and regulations by the Navy and SBA, one of the other bidders (so long as responsive and responsible) would have received the award. The substantive legal conclusions implicit in this determination are unchallenged and the findings of fact are not clearly erroneous.

It is important to note that the order of the district court is not an order directing the Navy to award the contract to any specific plaintiff. Appellees Schottel and Ulstein were the third and fourth lowest bidders for the contract. It is possible that the second lowest bidder will be awarded the contract. It is also possible that the lower bids, including those of Ulstein and Schottel, may be rejected for defects in responsiveness or responsibility, leading to the award of the contract to a higher bidder or to no bidder at all. The order of the court merely undoes the illegal agency actions and instructs the agency to proceed with the procurement which is in progress.

■ There are sound policy reasons to continue the contracting process rather than to cancel the solicitation and begin anew. "To have a set of bids discarded after they are opened and each bidder has

learned his competitor's price is a serious matter, and it should not be permitted except for cogent reasons." *International Graphics*, 4 Cl.Ct. at 518. No cogent or compelling reasons have been offered for resolicitation in this case. There is no reason on this record to assume that the requirements of the Navy have changed or that there is any defect in the remaining bids. Furthermore, to order a resolicitation would frustrate the policies behind permitting disappointed bidders to bring *Scanwell* actions. A disappointed bidder is given standing to bring such suits as a "private Attorney General" in order to further the public, as well as his own, interest. *Scanwell Laboratories*, 424 F.2d at 864. Ulstein and Schottel have expended funds and effort in successfully pursuing this action. A fair incentive for bringing this type of action is the expectation that, where possible, the successful plaintiffs will be put back in the position they would have occupied but for the illegal agency actions. *Delta Data Sys.*, 744 F.2d at 206–07. Failure to do so would chill future disappointed bidders from exercising their rights.

■■■ We are proffered no potent reason why the Navy should abstain from proceeding to review the remaining bids and to award the contract to one of the remaining bidders. The bids have not expired, since the expiration period on public contract solicitations is for the benefit of the bidders, who have the option of waiving this protection. *International Graphics v. United States*, 4 Cl.Ct. at 519–21. If the needs of the Navy have changed during the period of litigation, the Navy can request a modification of the injunction. In the absence of any changed circumstances, there appears to be no strong reason why the existing, apparently valid and proper bids should be discarded and the entire process begun anew.

AFFIRMED.