**J.G.B. ENTERPRISES, INC., Plaintiff,**

v.

**The UNITED STATES of America, the United States Army Aviation and Troop Command, the United States Small Business Administration, and Alpine Industries, Defendants.**

No. 95–CV–155 (RSP–GJD).

United States District Court,
N.D. New York.

April 12, 1996.

Joseph A. Camardo, Jr., Auburn, NY, for Plaintiff.

Thomas J. Maroney, United States Attorney, Northern District of New York, Syracuse, NY, for Defendants United States of America, United States Army Aviation and Troop Command, and United States Small Business Administration (Paula Ryan Conan, Assistant United States Attorney, of counsel).

Corbridge Baird & Christensen, Salt Lake City, UT (Lawrence E. Corbridge, of counsel) and Nottingham Engel Gordon & Kerr, Syracuse, NY (Richard L. Engel, of counsel), for Defendant Alpine Industries.

POOLER, District Judge.

## INTRODUCTION

Plaintiff J.G.B. Enterprises, Inc. ("JGB") and defendants United States, United States Army Aviation and Troop Command ("AT-COM"), and United States Small Business Administration ("SBA") cross-moved for summary judgment in this government contracts action. In the alternative, JGB opposed the government's summary judgment motion. Because there is no material issue of fact regarding the government's reasonable award of the disputed contract, I grant the government's motion for summary judgment and dismiss JGB's complaint.[1]

## BACKGROUND

The following facts are undisputed. On April 28, 1994, ATCOM issued a bid invitation for a government contract to supply six portable water storage and distribution sys-

---

**1.** On June 29, 1995, the parties filed a stipulation dismissing this action against Alpine without prejudice. Dkt. No. 40. I signed an order granting Alpine's dismissal motion on June 30, 1995. Dkt. No. 41.

tems. Bernhardt Aff. of 4/20/95, Ex. 1. The government uses the systems to provide safe, potable water to between 3,000 and 4,000 people at a time during military exercises and disasters. Smith Aff. of 4/26/95, ¶ 3. The contract was subject to the requirements of the Walsh Healey Public Contracts Act ("Walsh–Healey") as well as a small business set-aside preference. Bernhardt Aff. ¶ 4 & Ex. 1. Both JGB and Alpine submitted bids. According to plaintiff, JGB supplied similar water systems under a previous government contract. *Id.* ¶ 6. Alpine in 1992 won a government contract involving the manufacture and supply of 113 hypochlorination units, which are a component of the water storage and distribution systems but are not part of the instant contract. *See* Uptain Decl. of 4/27/95, ¶ 8 & Ex. 6; *see also* Bernhardt Aff. ¶ 14; Smith Aff. ¶ 4. Plaintiff stresses that the two products are distinct. Pl. Opp'n to Def. Statement of Material Facts, ¶ 16.

Based on the parties' submissions, ATCOM determined that Alpine was the apparent low bidder, with a bid of $181,608, and JGB was the next lowest bidder with a bid of $225,890. Uptain Decl. ¶ 4. At ATCOM's request, Alpine verified its bid amount. *Id.* Ex. 5. On July 15, 1994, the contracting officer for ATCOM, Howard Uptain, requested a pre-award survey, which is an investigation into Alpine's ability to successfully complete the contract. *Id.* ¶ 7. ATCOM relied on a pre-award survey conducted by ATCOM's Production Management Division on July 8, 1994, in connection with another contract. *Id.* ¶¶ 9–10 & Ex. 7. The resulting survey dated July 19, 1994, found that Alpine met all production and technical requirements for the contract except that Alpine was "nonresponsible" with respect to its accounting system because the system did not permit the use of progress payments. *Id.* Ex. 7, at 15. JGB contends that ATCOM's pre-award survey was merely cursory.

Uptain informed Alpine of ATCOM's determination by letter dated August 2, 1994. Uptain Decl. Ex. 8. By letter dated August 11, 1994, Uptain referred the issue concerning Alpine's accounting system to the SBA because "the contractor was notified of the

[ATCOM] Contracting Officer's Determination of Nonresponsibility and the contractor has requested a determination of responsibility be made by the Small Business Administration." *Id.* Ex. 9.

ATCOM's referral to the SBA is an administrative appeal. *See* 48 C.F.R. § 219.602–1 (1994); 48 C.F.R. § 19.602–1 (1994); 13 C.F.R. § 125.5(d) (1995). The SBA is authorized to conduct its own review of the small business and issue it a "certificate of competency" if the SBA is satisfied that the small business is a responsible bidder. 13 C.F.R. § 125.5(d) & (e). If a certificate of competency issues, then "[c]ontracting officers are directed to award a contract without requiring the firm to meet any other requirement with respect to responsibility and eligibility." *Id.* § 125.5(j). *See generally Ulstein Maritime, Ltd. v. United States,* 833 F.2d 1052, 1054 (1st Cir.1987) (explaining conclusive effect of certificate of competency review).

In a report dated August 29, 1994, an industrial specialist working for the SBA concluded that "Alpine Industries has all the technical and financial capabilities to perform" the water system contract. Koppel Decl. of 4/26/95, Attach., at 4. In addition to reviewing and approving Alpine's new accounting system, the SBA industrial specialist reviewed and approved Alpine's technical capabilities, plant, facilities and equipment, material availability, quality control, and production and performance capability with respect to the water system contract. The SBA investigation included a survey visit to Alpine's manufacturing facilities in Alpine, Utah, although the SBA's loan officer did not visit the site. *Id.* At a meeting on September 6, 1994, a regional committee of the SBA reviewed the industrial specialist's investigation and concluded that Alpine was qualified to perform the ATCOM contract. The committee unanimously issued a certificate of competency to Alpine. *Id.*

Meanwhile, JGB performed its own investigation of its competitor and determined that Alpine could not perform the contract. JGB consequently filed two pre-award bid protests with ATCOM on August 31, 1994. Bernhardt Aff. Ex. 6. In the first protest, JGB claimed that Alpine was not a responsi-

ble bidder and was unable to physically perform the contract within the time and cost stipulated. In the second protest, JGB claimed that Alpine was not qualified to receive the contract because it was not a "manufacturer" or "regular dealer" as required by Walsh–Healey but instead intended to rely on subcontractors to fulfill the contract. *See* 48 C.F.R. §§ 22.606–1, 22.606–2 (1994) (defining manufacturer and regular dealer). In the nearly identical protests, JGB claimed that (1) Alpine's physical plant was too small to permit manufacture of more than one unit at a time; (2) Alpine employed too few people to perform the work unless the company subcontracted substantial portions of the job; (3) Alpine had no experience in manufacturing this complex equipment; (4) Alpine needed to purchase expensive testing and manufacturing equipment in order to complete the contract, and these costs were not reflected in Alpine's bid price; (5) Alpine's bid price was too low to cover the costs of material and labor;[2] and (6) based on Alpine's previous work experience, it could manufacture only 5 percent of the water systems itself and would need to subcontract for other components.

ATCOM denied both of JGB's pre-award protests by letter dated September 23, 1994. Bernhardt Aff. Ex. 7. In the letter, ATCOM stated that it was required to award the contract to Alpine once the SBA had issued a certificate of competency in favor of Alpine. Citing 15 U.S.C. § 637(b)(7)(c), ATCOM stated that "this certification by the SBA is conclusive (regarding both responsibility and Walsh–Healy [sic]), and the agency is required to award the contract to the small business concern 'without requiring it to meet any other requirement of responsibility or eligibility.'" *Id.*

ATCOM awarded the water distribution system contract to Alpine on September 26, 1994. Uptain Decl. Ex. 1; *see also* Bernhardt Aff. Ex. 8. Delivery of the systems initially was due on July 24, 1995, but the parties extended the deadline to August 24, 1995. Durrant Aff. of 4/26/95, ¶ 12; *see also* Bernhardt Aff. ¶ 42.

On October 11, 1994, JGB received a request for price quotations from a company working as a subcontractor to Alpine under the ATCOM contract. Bernhardt Aff. ¶ 26. JGB contends that the information it gleaned from this request as well as from its additional investigations revealed that Alpine did not understand the ATCOM contract requirements because it was ordering parts and supplies in quantities too low to fulfil the contract. In addition, JGB contends that its investigation revealed that Alpine would not meet the contract delivery deadline. Plaintiff articulated its concerns in a post-award Walsh–Healey protest that it submitted to ATCOM on November 4, 1994. *Id.* Ex. 10. ATCOM never responded to the protest, which the government admits never was processed. Uptain Decl. ¶ 20.

Consequently, plaintiff commenced this action in federal court on February 3, 1995. In its complaint, JGB sought a declaration that the SBA's certificate of competency issued to Alpine was invalid, an injunction ordering ATCOM to ignore the certificate of competency and set aside the contract with Alpine, an order directing ATCOM to award the contract to JGB, and, in the alternative, an award of bid preparation costs, lost profits and attorney's fees. JGB moved for a preliminary injunction against defendants, which I denied from the bench on May 1, 1995, after hearing oral argument. As part of my decision, I held that JGB raised sufficiently serious questions going to the merits to make them a fair ground for litigation, but I specifically declined to hold that JGB had shown a likelihood of success on the merits. Dkt. No. 28, Dec. of 5/1/95, at 12. The government next moved for summary judgment, and JGB both opposed the motion and cross-moved for summary judgment relief on its behalf.[3] Oral argument took place on July 17, 1995.

---

**2.** This particular challenge explicitly is included in JGB's responsibility protest and is implicit in JGB's Walsh–Healey protest.

**3.** By an order dated October 18, 1995, Magistrate Judge Gustave J. Di Bianco denied plaintiff's motion to conduct discovery pending my decision on the cross-motions for summary judgment. Dkt. No. 50.

## DISCUSSION

### I. Summary judgment standard

 Summary judgment shall enter if, when viewing the evidence in the light most favorable to the nonmovant, the court determines that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Eastman Kodak Co. v. Image Technical Servs., Inc.,* 504 U.S. 451, 456, 112 S.Ct. 2072, 2076–77, 119 L.Ed.2d 265 (1992). A party seeking summary judgment must demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). If the movant satisfies this initial burden, then the burden shifts to the nonmovant to proffer evidence demonstrating that a trial is required because a disputed issue of fact exists. *Weg v. Macchiarola,* 995 F.2d 15, 18 (2d Cir.1993). The nonmovant must do more than present evidence that is merely colorable, conclusory, or speculative and must present "concrete evidence from which a reasonable juror could return a verdict in his favor...." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The nonmovant must do more than show "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### II. Standard of review

 Walsh–Healey incorporates the judicial review provisions of the Administrative Procedure Act ("APA"). 41 U.S.C. § 43a(a). Under the relevant standard, the reviewing court shall "hold unlawful and set aside agency action ... found to be—arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or "without observance of procedure required by law." *Id.* § 706(2)(D). In order to set aside ATCOM's action, therefore, JGB ultimately must show either that the procurement decision had no rational basis *or* that the procurement procedure "involved a clear and prejudicial violation of applicable statutes or regulations." *Marwais Steel Co. v. Department of the Air Force,* 871 F.Supp. 1448, 1451 (D.D.C.1994) (quotation omitted); *see also Buffalo Cent. Terminal v. United States,* 886 F.Supp. 1031, 1045 (W.D.N.Y.1995) (citation omitted).

### III. JGB's pre-award protests

 JGB contends that it is entitled to summary judgment because ATCOM failed to follow mandatory regulations regarding the processing of JGB's pre-award Walsh–Healey protest. It is well settled that an agency has abused its discretion where it failed "to comply with its own regulations ... which precluded it from reaching a reasonable and rational determination on awarding the contract." *General Elec. Co. v. Seamans,* 340 F.Supp. 636, 640 (D.D.C.1972). *See also Ulstein Maritime,* 833 F.2d at 1054. However, under the undisputed circumstances of this case, ATCOM did not abuse its discretion because the procedures JGB now invokes were inapplicable.

 Plaintiff primarily argues that ATCOM violated the Federal Acquisition Regulations ("FAR") because it did not forward JGB's Walsh–Healey pre-award protest to the Department of Labor ("DOL"). JGB contends that the SBA should not have had an opportunity to review Alpine's bid and that ATCOM should have held the contract award in abeyance pending the outcome of DOL review. Plaintiff also argues that ATCOM failed to certify that the contract was urgent, which would permit the agency to make the contract award notwithstanding pending DOL review. *See* 48 C.F.R. § 22.608–4(b)(1)(i) (1994).

According to the relevant regulations, when a bidder files a pre-award Walsh–Healey protest, the contracting officer is obligated to, among other things, determine the Walsh–Healey eligibility of the apparent low bidder. 48 C.F.R. § 22.608–3(a)(4). Then, if either the low bidder or the protestor disagrees with the contracting officer's determination, they are entitled to additional review. If the low bidder is a small business and the contracting officer determines it to be eligible under Walsh–Healey, then the file is to be forwarded "to the DOL, Administrator of the Wage and Hour Division, without refer-

ring the matter to the SBA." *Id.* § 22.608–3(b)(3).

Although JGB contests the thoroughness and accuracy of ATCOM's review, it is undisputed that ATCOM's contracting officer made an initial determination that Alpine met Walsh–Healey eligibility criteria.[4] ATCOM forwarded the Alpine file to the SBA on August 11, 1994, because ATCOM had found Alpine nonresponsible with respect to its accounting system. The regulation language regarding SBA review of the contracting officer's responsibility determination is nondiscretionary.[5] It is undisputed that ATCOM received JGB's pre-award protest on August 31, 1994, *after* ATCOM already had complied with applicable regulations by forwarding the file to the SBA. Therefore, it was impossible for ATCOM also to comply with Section 22.608–3(b)(3) and send the file directly to DOL. ATCOM did not violate the FAR regulations.

JGB also contends that ATCOM failed to follow various notification requirements upon its receipt of JGB's pre-award Walsh–Healey protest. These regulations require the contracting officer to, among other things, notify the low bidder of the Walsh–Healey pre-award protest, notify the parties that additional evidence will be accepted, notify all bidders that the bid acceptance period should be extended, make a Walsh–Healey eligibility determination, and notify the parties of that decision and their appeal rights. 48 C.F.R. §§ 22.608–3(a)(1)–(5). The regulations also require the contracting officer to hold the contract award in abeyance until DOL review is complete. *Id.* § 22.608–3(b)(3). Again, it is undisputed that ATCOM did not follow these procedures because it already had forwarded the matter to the SBA when it received JGB's pre-award protest. ATCOM admits that it took no action on JGB's pre-award protest and instead awaited the SBA's dispositive certificate of competency decision, which arrived within three business days of JGB's protests. Uptain Decl. ¶ 18. It would have been impossible for ATCOM to act on the protests because ATCOM no longer had control over the matter.

Consequently, JGB is not entitled to summary judgment. JGB is correct that ATCOM failed to follow procedures outlined in Sections 22.608–3(a) and (b). However, these regulations clearly were inapplicable under the facts of this case. ATCOM's action thus did not violate the FAR regulations, and the agency did not abuse its discretion.

## IV. ATCOM's contract award

I turn next to the government's motion for summary judgment dismissal of plaintiff's complaint. As noted previously, JGB to prevail must prove either that ATCOM's procurement decision had no rational basis or that the process involved a clear and prejudicial violation of applicable regulations. *See Marwais Steel Co.*, 871 F.Supp. at 1451. I therefore will address each element.

### A. Rational and reasonable agency decision

■ The government contends that, based on the undisputed facts, ATCOM's decision to award the contract to Alpine was rational and reasonable because Alpine was the low bidder by a 25 percent margin, ATCOM had prior successful contracting experience with Alpine, and both a pre-award survey and an SBA investigation confirmed Alpine's ability to perform the contract. Plaintiff responds that (1) the government's failure to follow non-discretionary regulations and hold the contract in abeyance was an abuse of discretion and a violation of law; (2) the low bid price and Alpine's subsequent loss on the contract show that pre-award surveys and

---

4. Normally a low bidder certifies its Walsh–Healey eligibility. According to the regulations, however, a contracting officer may not rely on the bidder's self-certification and "shall investigate and determine the eligibility of the offeror" if a pre-award survey is made "to determine the technical and production capability, plant facilities and equipment, and subcontracting and labor resources of the offeror." 48 C.F.R. § 22.608–2(b)(4). There is no dispute that ATCOM conducted a pre-award survey.

5. *See* 13 C.F.R. § 125.5(d) (contracting officers "shall notify SBA of such [nonresponsibility] determination"); *see also* 48 C.F.R. § 219.602–1(a)(ii)(A) (contracting officer "shall refer the matter to the SBA" upon receiving small business' request for review of nonresponsibility determination).

investigations were inadequate; and (3) AT-COM's bad faith in awarding the contract is an issue of fact that not only precludes summary judgment but also permits plaintiff to look outside the administrative record in this lawsuit. Drawing all reasonable inferences in favor of the non-moving plaintiff, I find that ATCOM's contracting decision nonetheless was rational and reasonable as a matter of law.

First, plaintiff argues that ATCOM's failure to forward JGB's pre-award protests to DOL as required by regulations was irrational and undermined the integrity of the bid process. In general, an agency has abused its discretion where it violates its own regulations. *Ainslie Corp. v. Middendorf,* 381 F.Supp. 305, 307–08 (D.Mass.1974). However, as I stated at length in Section III of this opinion, under the undisputed facts of this case, the FAR regulations did not require ATCOM to forward JGB's Walsh–Healey pre-award protest to DOL. Because no regulatory violation occurred, ATCOM's decision was neither illegal nor irrational.

Second, plaintiff contends that because Alpine subsequently determined that it would lose approximately $50,000 in fulfilling its contract obligations, ATCOM's award of the contract to this low bidder was not "reasonable or rational or in the best interest of America." Pl. Mem. at 11–12. JGB contends that Alpine's loss on the contract is evidence that ATCOM's pre-award survey was cursory. I consider the adequacy of the ATCOM and SBA investigations in detail below. While plaintiff considers its competitor's loss to be a "tragedy," *id.* at 11, it is undisputed that an agency has not acted irrationally or unreasonably by selecting the low bid. *See Superior Eng'g and Elec. Co. v. United States,* 1987 WL 276858 *8 (E.D.Va. 1987) (holding that "[i]t would have been irrational on the part of the contracting officer to ... award the contract to a person who was performing the service at a greater expense to the government").

Third, JGB argues that issues of fact exist regarding ATCOM's bad faith in awarding the contact to Alpine.[6] However, not one of these alleged factual disputes is relevant to ATCOM's decision to award the contract to Alpine. Furthermore, not one of these alleged factual disputes is related to JGB's challenge to the contract award. Therefore, assuming that disputed issues of fact exist, they nonetheless are not material to this litigation. JGB first alleges a factual dispute based on alleged discrepancies in cost estimates regarding Alpine's intention at the time it certified its responsibility to the SBA. However, Alpine no longer is a party to this litigation, making its intent irrelevant. JGB does not and cannot allege any collusion or improper dealing between Alpine and the SBA or ATCOM. Rather, plaintiff merely contends again that the agencies' reviews were inadequate.

Plaintiff next alleges a factual dispute regarding ATCOM's failure to forward the pre-award protests to DOL both at the time it received the protests and after this lawsuit began. However, under the undisputed facts of this case, the regulations did not require ATCOM to forward the protests to DOL at any time. Furthermore, plaintiff raises the frivolous argument that ATCOM misled JGB into believing that the agency sent the pre-award protests to the SBA. Pl. Mem. at 15. The alleged misleading letter, however, correctly and clearly states that, "The pre-award survey on Alpine resulted in the request for review by the Small Business Administration (SBA) and the subsequent issuance by the SBA of a Certificate of Competency (COC)." Bernhardt Aff. Ex. 7. No reasonable reading of the letter indicates that ATCOM sent plaintiff's pre-award protests to the SBA.

JGB also alleges a factual dispute regarding ATCOM's admitted mishandling of the post-award protest. Because ATCOM admits that it lost the post-award protest, no

---

**6.** Contrary to plaintiff's contentions, I did not make a finding during the preliminary injunction proceedings that ATCOM's actions "were suspect and in violation of the Procurement Regulations." Pl. Mem. at 13. My decision did not address whether regulations required ATCOM to forward the pre-award protests to DOL. Rather, the decision merely stated that JGB at that time met the low threshold of showing sufficiently serious questions about ATCOM's general handling of the pre-award and post-award protests.

factual dispute exists. Moreover, as discussed below, JGB cannot show that ATCOM's conduct caused plaintiff any prejudice because the post-award protest merely restated information in plaintiff's pre-award protest, all of which ATCOM and the SBA considered in their respective reviews.

Finally, plaintiff alleges a factual dispute regarding whether Alpine supplied a first production article because of apparent conflicts in the affidavits from ATCOM contracting officer Uptain and Alpine president Kent Durrant. Similarly, JGB alleges a factual dispute regarding Alpine's satisfactory performance of the contract because the parties agreed to extend the deadline by one month in exchange for a $2,000 payment from Alpine. *See* Uptain Decl. ¶ 22. Neither of these disputes is relevant to ATCOM's decision to award the contract in September 1994 because they concern events that occurred long after the contract award.[7] Therefore, because plaintiff failed to articulate any relevant instances of ATCOM's bad faith, it is unnecessary to look beyond the administrative record in my review of ATCOM's decision. *See Buffalo Cent. Terminal,* 886 F.Supp. at 1046.

Consequently, JGB failed to raise an issue of material fact with respect to ATCOM's decision to award the contract to Alpine. I only have a "limited role in reviewing the decisions of procurement officials." *Superior Eng'g and Elec. Co.,* 1987 WL 276858 at *7. Based on the administrative record, which documents Alpine's low bid, ATCOM's prior satisfactory experience with Alpine, ATCOM's pre-award survey, and the SBA investigation, ATCOM's decision to award the contract to Alpine was rational and reasonable.

### B. Prejudicial regulatory violation

The government next argues that JGB cannot show that the procurement process involved a clear and prejudicial violation of applicable regulations. Plaintiff responds that it suffered prejudice because (1) its protests were legitimate Walsh–Healey protests, which ATCOM mishandled; and (2) ATCOM

itself did not perform a Walsh–Healey investigation.

### 1. Pre-award protest

■ There is no dispute that ATCOM and the SBA reviewed Alpine's contract responsibility. According to the relevant regulations, responsibility and Walsh–Healey eligibility are distinct issues, but they overlap to a great extent. The Walsh–Healey criteria in Section 22.606–1 regarding an eligible manufacturer, for example, concern determinations such as whether the bidder "has a plant, equipment, and personnel to manufacture on the premises the items called for *under the contract.*" 48 C.F.R. § 22.606–1(a)(1)(ii) (emphasis added). These determinations also are relevant to the SBA's responsibility review. *See* 13 C.F.R. § 125.5(b) (SBA in making certificate of competency determination must consider whether business "performs a significant portion of the contract with its own facilities and personnel.") In addition, the regulations regarding responsibility contain a cross-reference to the Walsh–Healey eligibility regulations at 48 C.F.R. § 22.608–2. *See* 48 C.F.R. §§ 9.104–1, 9.104–3(a) (1994).

If anything, a responsibility review encompasses more issues than one regarding Walsh–Healey eligibility. An established manufacturer must show that it has plant, equipment and personnel to manufacture contract items. 48 C.F.R. § 22.606–1(a)(1)(ii). In addition to that, a responsible bidder also must show that it has adequate financial resources to perform the contract, can meet the contract deadlines, and has satisfactory performance records, business ethics, and various organizational controls. 48 C.F.R. § 9.104–1. Finally, the FAR regulations state that a contracting officer cannot rely on a bidder's self-representations as to Walsh–Healey eligibility if the contracting officer has conducted a pre-award survey regarding responsibility issues. 48 C.F.R. § 22.608–2(b)(4). This requirement only is rational if the pre-award survey covers sub-

---

**7.** In a letter to counsel for the government, JGB's counsel admitted that the relevant time frame for issues in this litigation was the time Alpine submitted its bid. Specifically, counsel stated that,

"[w]hether or not Alpine is now complying with Walsh Healey or will comply with Walsh Healey in the near future, is totally irrelevant." Camardo Aff. of 4/20/95, Ex. 2, at 2.

stantially the same issues as Walsh–Healey eligibility reviews.

Granting all reasonable inferences to plaintiff, I find that JGB submitted a proper Walsh–Healey pre-award protest even though JGB's Walsh–Healey eligibility protest was similar to its responsibility protest. As demonstrated above, the two areas coincide. I therefore reject the government's argument that JGB's Walsh–Healey pre-award protest was merely a responsibility protest with a different label. Nonetheless, there is absolutely no evidence that ATCOM and the SBA conducted inadequate reviews that prejudiced JGB.

▮ A comparison of the responsibility reviews and JGB's pre-award protest allegations clearly demonstrates that the agencies addressed in substance each element of JGB's Walsh–Healey protest. The agency determinations were based on technical evaluations of Alpine's facilities and abilities and thorough reviews of Alpine's responsibility with respect to its manufacturing capabilities. *See* Uptain Decl. Ex. 7; Koppel Decl. Attach. The agency evaluations encompassed all of JGB's areas of concern, such as Alpine's experience, physical plant and personnel. Although plaintiff argues that the SBA review was inadequate in part because the agency did not conduct a field visit, the SBA report states that a visit to Alpine's facilities took place. Koppel Decl. Attach., at 2. The handwritten SBA notes on which JGB relies only state that the agency conducted no onsite review of Alpine's accounting system. *Id.* Finally, the SBA determined that Alpine was qualified to perform the contract when it issued a certificate of competency, which certifies that a business "possesses a responsibility and/or eligibility to perform a specific Government procurement (or sale) contract." 13 C.F.R. § 125.5. Thus, JGB suffered no prejudice by the agencies' failure to explicitly consider its pre-award Walsh–Healey protest because the agencies reviewed in substance each of JGB's claims.

Plaintiff reminds me that in my decision denying JGB a preliminary injunction, I stated that I was "troubled" that ATCOM did not consider JGB's pre-award protests on the merits because ATCOM already had referred the case to the SBA. Dkt. No. 28, Dec. at 8–9. At least one district court has interpreted the SBA regulations regarding certificates of competency as imposing a heavy "forwarding burden" on the contracting officer to supply the SBA with any pertinent information regarding the small business. *Marwais Steel Co.*, 871 F.Supp. at 1452. ATCOM may not have met this forwarding burden because it failed to send JGB's protests to the SBA. However, even if ATCOM failed in this regard, JGB suffered no prejudice, and the lack of prejudice is determinative. In *Marwais Steel Co.*, the district court held that defendants were entitled to summary judgment because plaintiff suffered no prejudice, even though the agency should have made a Walsh–Healey determination before awarding its contract. *Id.* at 1454. The court held that the agency's eligibility finding seven months after the contract was awarded vitiated any possible prejudice to plaintiff. *Id.* JGB has an even weaker claim of prejudice, because both ATCOM and the SBA considered the substance of its challenges before Alpine received the contract.

### 2. Post-award protest

The government contends that because JGB's post-award protest was untimely, plaintiff suffered no prejudice from ATCOM's failure to process it. Although JGB argues that the post-award protest was timely, I disagree. The general regulations regarding contract disputes and appeals provide that "protests shall be filed not later than 10 working days after the basis of protest is known or should have been known, whichever is earlier." 48 C.F.R. § 33.103(b)(2) (1994).[8] The FAR regulations regarding Walsh–Healey protests do not provide a different deadline but permit protests to be filed up until the time of final contract completion. *Id.* § 22.608–6(a). An agency has discretion to consider untimely protests if the protestor shows good cause for the delay or if the protest raises issues "signifi-

---

**8.** A different deadline applies to protests based on improprieties in bid solicitations that are apparent prior to bid opening or to the closing date for receipt of proposals. *Id.*

cant to the agency's acquisition system." *Id.* § 33.103(b)(2).

■ JGB admits that it based its post-award protest on information it discovered on October 11, 1994. Bernhardt Aff. ¶¶ 26–29. Plaintiff filed the protest on November 4, 1994, which is beyond. the 10–day deadline. *See id.* Ex. 10. However, even if JGB's protest was timely, plaintiff suffered no prejudice by ATCOM's failure to process it because the post-award protest raises the same issues considered and determined by the agency in its pre-award survey. The post-award protest merely challenges again Alpine's physical plant capabilities and its representation to perform substantial fabrication of the product, which ATCOM and the SBA considered. *See* Uptain Decl. Ex. 7; Koppel Decl. Attach. Notably, the agencies reviewed and approved Alpine's written quotations for contract materials, some of which were the "new information" JGB discovered on October 11, 1994. *Id.* Thus, JGB cannot raise any factual dispute tending to show that ATCOM's decision would have changed after considering the post-award protest.

With respect to both the pre-award and post-award protests, JGB suffered no prejudicial regulatory violation. Summary judgment for defendants is appropriate.

## CONCLUSION

For the foregoing reasons, JGB's motion for summary judgment is denied. The government's motion for summary judgment is granted, and this action is dismissed. IT IS SO ORDERED.