**DAE CORPORATION, Appellant**

v.

**Susan ENGELEITER, Administrator, Small Business Administration, et al.**

**No. 90–5234.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 25, 1991.

Decided March 13, 1992.

Matthew L. Myers, with whom Terrance G. Reed, Washington, D.C., was on the brief, for appellant.

James R. Layton, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., and David Fishman, Counsel, U.S. Small Business Admin., Washington, D.C., were on the brief, for appellees.

Before SILBERMAN, D.H. GINSBURG and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

The Department of Health and Human Services ("HHS") recommended to the Small Business Administration ("SBA") that DAE Corporation, a disadvantaged small business, be awarded a contract under the § 8(a) program of the Small Business Act. 15 U.S.C. § 637(a). The SBA became frustrated with obtaining documents from DAE necessary for a responsibility determination required under the § 8(a) program and therefore advised HHS to recommend another contractor. DAE sought judicial review of the SBA's action, arguing that the SBA should have provided notice and a hearing as required by the Certificate of Competency program, authorized by 15 U.S.C. § 637(b)(7), before stopping the responsibility determination

process. The District Court granted the SBA's summary judgment motion, from which decision DAE now appeals.

For the reasons set out below, we hold that SBA responsibility determinations for disadvantaged small businesses seeking contracts under the § 8(a) program are covered exclusively by 15 U.S.C. § 637(a)(16) and do not involve the procedures required by § 637(b)(7). The District Court's order of summary judgment is therefore affirmed, albeit on different grounds.

## I. BACKGROUND

### A. The Statutory Framework

In order to put forth understandably the factual background of this controversy, we must first briefly review the statutory framework of the Small Business Act, particularly as it applies to the federal procurement process.

Sections 8(a) and 8(b) of the Small Business Act, 15 U.S.C. §§ 637(a) & (b), created two related but distinct programs for participation in the federal procurement process by small businesses. Under the § 8(a) program, the SBA contracts directly with federal procuring agencies for a good or service, and then subcontracts the work solely to a small business owned by a socially or economically disadvantaged person. 15 U.S.C. § 637(a)(1)(A)–(B); *see* JOHN CIBINIC, JR. & RALPH C. NASH, JR., FORMATION OF GOVERNMENT CONTRACTS 959–60 (2d ed. 1986). Once a procuring agency recommends a disadvantaged small business to the SBA, the SBA will award the subcontract upon determining that the prospective contractor is responsible. 15 U.S.C. § 637(a)(16)(A)(i).[1]

In 1989, the SBA issued regulations implementing its authority under 15 U.S.C. § 637(a)(16) to conduct responsibility determinations for § 8(a) contractors. 54 Fed.

Reg. 34,692 (1989) (codified at 13 C.F.R. §§ 124.308 & 124.313). As relevant to this appeal, the SBA's duty to make a responsibility determination is triggered when it receives an offering letter from the procuring agency. 13 C.F.R. § 124.308(c)–(d). The offering letter may identify a specific contractor that the procuring agency wants to use and will describe the type of work it wants performed. *Id.* § 124.308(c)(12). If it receives the required financial information from the contractor, *id.* § 124.313(a), and finds the contractor responsible, the SBA will then award the subcontract. *Id.* § 124.308(e)(1)–(2). These regulations do not provide for the procuring agency to become involved in determining a § 8(a) contractor's responsibility, and § 124.313 expressly forbids contractors found nonresponsible by the SBA from seeking a Certificate of Competency pursuant to 13 C.F.R. § 125.5. *Id.* § 124.313(c).

Section 8(b) grants the SBA authority to "provide technical and managerial aids to small-business concerns, by advising and counseling on matters in connection with Government procurement ... and on policies, principals [sic], and practices of good management." 15 U.S.C. § 637(b)(1)(A). The specific procurement assistance program authorized by § 8(b) relevant to this appeal is the SBA's authority to "certify to Government procurement officers ... all elements of responsibility ... of any small business concern ... to receive and perform a specific Government contract." *Id.* § 637(b)(7)(A). A nonresponsibility determination renders a business ineligible for award of a government contract.

To implement its § 637(b)(7) authority, the SBA promulgated regulations in 1979 establishing the Certificate of Competency ("COC") program. *See* 44 Fed.Reg. 60,274 (1979) (codified as amended at 13 C.F.R.

---

**1.** The Federal Acquisition Regulation ("FAR"), which applies to all federal government contracts, states that "[p]urchases shall be made from, and contracts shall be awarded to, responsible prospective contractors only." 48 C.F.R. § 9.103(a). The general standards for determining responsibility require a prospective contractor to show that it has adequate financial resources to perform the contract, can comply

with contractual performance schedules, has a satisfactory performance history, maintains appropriate integrity and business ethics standards, has now or can obtain the necessary organizational and technical skills to perform the contract, has now or can obtain production and technical equipment, and is otherwise qualified and eligible to be awarded a government contract. *See Id.* § 9.104–1.

§ 125.5). The COC program is available to all small businesses (including those owned by economically or socially disadvantaged persons) that have "submitted the most favorable acceptable offer" for a contract but whose ability to meet certain responsibility criteria is questioned by the procuring agency's contracting officer. NASH & CIBINIC, *supra*, at 949.

When a small business's responsibility is questioned by a procuring agency, the agency must refer the matter to the SBA for implementation of the COC procedures. *Id.* at 948–49. Once the SBA receives a referral, it notifies the contractor that its responsibility is being evaluated and invites the contractor to provide supporting documentation. 13 C.F.R. § 125.5(e). The SBA then determines, without holding a hearing, whether the contractor meets the responsibility criteria. *Id.* § 125.5(f). If a contractor obtains a COC, then it is deemed responsible, and a procuring agency may not withhold award of a contract to a certified small business on responsibility grounds. 15 U.S.C. § 637(b)(7)(C) ("[T]he officers of the Government having procurement ... powers are directed to accept such certification as conclusive...."). Accordingly, one treatise refers to the COC as a "passport for small business to enter the land of Government contracts." 7 JOHN C. MCBRIDE & THOMAS J. TOUHEY, GOVERNMENT CONTRACTS § 48.180, at 48–227 (1991).

### B. Factual Summary

Late in 1989, the HHS initiated the Urban Youth Public Education Campaign, a multi-media public awareness effort to discourage drug and alcohol abuse among urban school children. Within HHS, the Office of Substance Abuse Prevention ("OSAP") spearheaded this effort and decided to use a disadvantaged small business through the § 8(a) program. The OSAP conducted an informal technical review of several qualified contractors and in a letter to the SBA dated February 20, 1990, recommended that DAE be awarded the contract. This communication constituted an offering letter under 13 C.F.R. § 124.308(c), upon the receipt of which the SBA began conducting a responsibility de-

termination under 13 C.F.R. § 124.-308(e)(1)–(2).

According to the SBA, the responsibility determination was complicated by a recent merger between DAE and a company called Prism. This merger resulted in a " 'substantial increase' " in DAE's size, and the SBA demanded new financial information reflecting the change. Reply Brief of Appellant at 3 (quoting Brief of Appellee at 3.). Exacerbating this problem was DAE's over one-month tardiness in submitting a quarterly financial statement for the period ending on December 31, 1989. Brief of Appellee at 3. The SBA made its first request for financial information regarding the OSAP contract on March 15, 1990, and DAE responded within four days. However, the SBA was not satisfied with DAE's response, and thereafter SBA made several requests for more detailed financial information. Brief of Appellant at 10.

On April 9, 1990, about twenty-five days after the SBA's first information request, the SBA informed OSAP that it was having difficulty obtaining information from DAE necessary for a responsibility determination, and OSAP recommended that the SBA contract instead with a firm called Global Exchange. The SBA never found DAE nonresponsible, but simply began inquiring into Global Exchange. Claiming that it should have been given notice and an opportunity for a hearing before being denied the OSAP contract, DAE sought judicial review of the SBA's actions.

Before the District Court, DAE argued that the SBA did not follow the COC procedures required by 15 U.S.C. § 637(b)(7) when it was determining whether DAE was responsible, and thus the SBA's action violated the Administrative Procedure Act by failing to observe "procedure required by law." 5 U.S.C. § 706(2)(D). The SBA did not contest its failure to use the COC procedures, asserting that the requirements of § 637(b)(7) did not apply to disadvantaged small businesses seeking contracts under the § 8(a) program. The parties also engaged in a factual dispute not at issue before us as to the reasonableness of the SBA's responsibility investigation of DAE.

Ultimately, the District Court granted the SBA's summary judgment motion on the ground that the February 20 offering letter did not trigger due process or the COC procedural protections. The District Court was willing to accept *arguendo* DAE's argument that the COC procedures applied to this § 8(a) program contract, but given the Court's disposition of the case, no one asserts that this acceptance constituted a holding. From this decision, DAE filed a timely appeal for review.

## II. ANALYSIS

■ Section 637(b)(7) imposes on the Administrator of the SBA the duty "to certify ... [the] responsibility ... of *any* small business concern." 15 U.S.C. § 637(b)(7) (emphasis added). Seizing on the word "any," DAE argues that the plain meaning of the terms in § 637(b)(7) required the SBA to use the procedures established in the COC program when deciding whether DAE satisfied the responsibility criteria for award of a § 8(a) contract. It is certainly true " 'that the legislative purpose is expressed by the ordinary meaning of the words used.' " *Ardestani v. INS*, —— U.S. ——, 112 S.Ct. 515, 520, 116 L.Ed.2d 496 (1991) (quoting *American Tobacco Co. v. Patterson*, 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982)). But the Supreme Court has also counseled us not to forget the "cardinal rule" of statutory interpretation "that a statute is to be read as a whole, ... since the meaning of statutory language, plain or not, depends on context." *King v. St. Vincent's Hospital*, —— U.S. ——, 112 S.Ct. 570, 574, 116 L.Ed.2d 578 (1991) (citations omitted). In effect, DAE urges us to ignore this rule and sunder § 637(b)(7) from its place within the Small Business Act. We decline the invitation.

Section 637(b)(7) no doubt does mean what it plainly says—but only where it applies. It is part of the § 8(b) program, and any small business proceeding under § 8(b) is entitled to its protections and its disadvantages. As the Comptroller General has affirmed, § 637(b)(7) is designed to help small businesses overcome the hesi-

tance a procuring agency may have in awarding an ordinary contract to a small business. *See Custom Research, Inc.*, Comp.Gen.Dec. B–238976.2, 90–1 Comp. Gen.Proc.Dec. ¶ 567 (1990) (explaining that the COC process "is provided by law to protect small businesses from arbitrary nonresponsibility determinations made by procurement agencies.").

The disadvantaged small business seeking a sole source contract under § 8(a), such as DAE, faces a vastly different situation. There, the procuring agency has asked the SBA to obtain the services of a specified disadvantaged small business—no passport is necessary because the contractor has already been admitted. Under § 637(a)(16), the SBA, not the procuring agency's contracting officer, assesses the responsibility of the prospective contractor. *See* 13 C.F.R. §§ 124.308 & 124.313. Thus, the § 637(a)(16) procedures are triggered as a matter of course whenever a disadvantaged small business is being considered for a § 8(a) contract, and not, as under the COC program, when a procuring agency contracting officer questions the responsibility of a small business. In this way, the SBA's role in a § 8(a) contract is analogous to an agency contracting officer's duty to make a responsibility determination for prospective contractors bidding to perform government work. *See* 48 C.F.R. Subpart 9.1 (providing policy and guidance to contracting officers who must assess whether a prospective contractor meets the responsibility standards).

Moreover, the § 124.308 procedures provide about as much notice and opportunity for a hearing as does the COC program. Under both §§ 124.308 and 125.5, the SBA contacts the contractor, requests the necessary information, and then makes a responsibility determination without holding a hearing. Although contractors may request a meeting with the SBA after being refused a COC, this meeting is "for the sole purpose of enabling the applicant to improve or correct deficiencies and will not constitute a basis for reopening the case." 13 C.F.R. § 125.5(g). As explained above, small businesses benefit from the COC program because it gives them an opportunity

to have the SBA rather than a procuring agency determine their responsibility, not because the COC program is a garden of procedural delights.

DAE characterizes the SBA's position as an impermissible effort to lock out disadvantaged small businesses from the protections conferred by § 637(b)(7) and the COC program. Brief of Appellant at 16. However, nothing in the SBA's brief or its presentation at oral argument lends itself to such a gross mischaracterization. In fact, its regulations define the term "small business" for purposes of the COC program as including "small concerns owned and controlled by socially and economically disadvantaged individuals." 13 C.F.R. § 125.2(c). This does not mean, however, that a small business can simultaneously enjoy the preferred status of a disadvantaged small business seeking a sole source contract under § 8(a) and the procedural protections offered by § 8(b).

The Small Business Act creates two distinct modes for determining the responsibility of disadvantaged small businesses. When such businesses seek sole source contracts governed by the § 8(a) program, the SBA is solely charged with determining their responsibility. However, when these same businesses seek government contracts governed by § 8(b), then, as it would for any other small business, the SBA acts as an appellate mechanism after an agency contracting officer questions a contractor's responsibility. The language and structure of the Act demonstrate unambiguously that Congress intended this result, and we, like the agency, must heed Congress's clear command. *Chevron U.S.A. Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.") (footnote omitted). We therefore hold that when a disadvantaged small business seeks a subcontract within the friendly confines of the § 8(a) program, then it will have its responsibility determined exclusively under the Part 124 procedures promulgated pursuant

to § 637(a)(16), not under the COC program authorized by § 637(b)(7).

### III. CONCLUSION

For the reasons discussed above, the judgment of the District Court is hereby *Affirmed.*