**ACTION SERVICE CORPORATION, Plaintiff,**

v.

**Lawrence H. GARRETT, Secretary of the Navy, and Patricia Saiki, Administrator, Small Business Administration, Defendants.**

**Civ. No. 92–1377 (JAF).**

United States District Court, D. Puerto Rico.

April 3, 1992.

Eric A. Tulla, Rivera Tulla & Ferrer, San Juan, P.R., Frank M. Rapoport, Sean P. Morgan, Saul Ewing Remick & Saul, Washington, D.C., for plaintiff.

Benjamin N. Thompson, Dunn, N.C., Fidel A. Sevillano-del-Río, Asst. U.S. Atty., Daniel F. López–Romo, U.S. Atty., D.P.R., Hato Rey, P.R., for defendants.

## OPINION AND ORDER

FUSTE, District Judge.

This is an action under 5 U.S.C. § 702 of the Administrative Procedure Act. Jurisdiction is invoked under the federal question statute, 28 U.S.C. § 1331. Venue is proper in the District of Puerto Rico pursuant to 28 U.S.C. § 1391(e).

Plaintiff alleges that the Department of the Navy ("Navy") and the Small Business Administration ("SBA") violated the Competition in Contracting Act, 10 U.S.C. § 2305(b), and the applicable Federal Acquisition Regulations ("FAR"), 48 C.F.R. chs. 1–6, by awarding a contract for guard services at the Vieques Island U.S. Naval Facilities to Fajardo Private Detectives and Security Guards Corp. ("Fajardo").

Plaintiff, Action Service Corporation ("Action"), currently holds the existing contract for guard services for Vieques Island U.S. Naval Facilities, scheduled to terminate on March 31, 1992.[1] Plaintiff moved for temporary injunctive relief until the issue could be decided; however, the court, without objection, consolidated the matter on an expedited schedule and combined the hearing for a preliminary injunction with a trial on the merits. Fed.R.Civ.P. 65(a)(2). The court encouraged Fajardo to intervene; however, it declined. *See* Docket Document No. 9.

### Facts

On July 1, 1991, the U.S. Navy, through Contracting Officer Willard Whisner, informed the Small Business Administration that it was offering a contract for guard services at the Vieques Island U.S. Naval Facilities in Puerto Rico in a competitive

---

**1.** The Navy, through the U.S. Attorney's office, stipulated before this court that no action on the award would take place until April 3, 1992, thus allowing this court to enter its decision.

section [8](a) acquisition. 48 C.F.R. § 19.-804–2. Section [8](a) of the Small Business Act, 15 U.S.C. § 637(a), created a program whereby the SBA can enter into a contract with a government agency which it then subcontracts to a small business certified by its program. Where, as here, the contract is valued at more than $3 Million, 48 C.F.R. § 19.805–1(a)(2), the section [8](a) award must be competitive. The SBA accepted the offer on July 11, 1991, and sent the Navy a list of the section [8](a) certified contractors in Puerto Rico. 48 C.F.R. § 19.804–3. The Navy then issued a solicitation or Request for Proposals ("RFP"), bearing number N62470–91–C–5411, on August 13, 1991. According to Part IV, Section M, of the Request for Proposals, "[t]he low bidder for purposes of award shall be the conforming, responsive, responsible bidder offering the lowest total price." Section M(c) also stated that the prospective contractor "shall meet the requirements of Navy Acquisition Procedures Supplement (NAPS) 19.804–90." Six bids were received:

| | |
|---|---|
| Fajardo Private Detectives and Security Guards Corp. | $10,758,458.40 |
| Action Service Corporation | $10,938,540.00 |
| Scotland Guard Services, Inc. | $11,556,713.00 |
| Hernández Security Services, Inc. | $11,813,993.83 |
| Yaurel Security Services, Inc. | $12,506,381.92 |
| Brisas Disposal Services | $16,799,011.44 |

Having ascertained that Fajardo was the low bidder, Mr. Whisner notified the SBA central office in New York. In a letter dated September 17, 1991, he wrote that "the low offerer's offer is acceptable and award would be made upon determination of section [8](a) eligibility for award is (sic) made by you." An SBA certification of eligibility was returned on September 19, 1991. On September 21, 1991, Mr. Whisner signed the business clearance memorandum for the award to Fajardo. This memo represented that a responsibility determination "within the meaning of FAR Subpart 9.104" had been performed when, indeed, this was not the case. On October 21, 1991, Mr. Aponte, the Service Contract Manager who worked under Mr. Whisner on the Vieques contract, issued a document entitled "Determination of Responsibility." This pro forma, after-the-fact determination consisted of a telephone conversation with Mr. Luis Rodríguez, a contract manager at SBA, a cursory review of the documents submitted by Fajardo, and the Equal Employment Opportunity Clearance Request approved on October 17, 1991.

Since the existing security guard contract with Action, the second lowest bidder, was to expire on October 31, 1991, Mr. Aponte was under time pressure to conduct this "responsibility determination."[2] The pro forma Aponte "responsibility determination" was conducted using an incorrect standard. Rather than utilizing the appropriate responsibility determination standards of the Federal Acquisition Regulations, 48 C.F.R. § 9.104–1,[3] the Service

**2.** In the memo, Mr. Aponte wrote "[d]ue to the limitation of time an informal survey was conducted by this office via a formal request to DCAS [Defense Contract Administration Services]."

**3.** FAR § 9.104–1

To be determined responsible, as prospective contractor must—

(a) Have adequate financial resources to perform the contract, or the ability to obtain them (see 9.104–3(b));

(b) Be able to comply with the required or proposed delivery or performance schedule, taking into consideration all existing commercial and governmental business commitments;

(c) Have a satisfactory performance record (see 9.104–3(c));

(d) Have a satisfactory record of integrity and business ethics;

(e) Have the necessary organization, experience, accounting and operational controls, and technical skills, or the ability to obtain them (including, as appropriate, such elements as production control procedures, property control systems, and quality assurance measures applicable to materials to be

Contract Manager only used the standards in NAPS section 19.804–90, the portion of the supplemental regulations incorporated into section M of the solicitation.[4] Under section M of a typical solicitation, an award could only be made if (a) the bidder was the lowest bidder; (b) he would be found to be the conforming, responsive, responsible bidder (48 C.F.R. § 9.104.1), and, in addition, he be found to comply with Navy Acquisitions Procedures Supplement section 19.804–90. The circumvention of the appropriate responsibility determination regulation was approved by the inaction of Contracting Officer Willard Whisner, who did not endorse in writing, as required, Mr. Aponte's incorrect application of the standard.

Upon the awarding of the contract to Fajardo on October 24, 1991, Action filed a protest with the General Accounting Office ("GAO") pursuant to the Competition in Contracting Act of 1984, 31 U.S.C. §§ 3551–3556, which exists as an alternative to internal agency protest procedures, 4 C.F.R. § 21. The General Accounting Office addressed the questions of (1) whether the Navy Acquisitions Procedures Supplement section 19.804–90 criteria incorporated into Section M of the solicitation were either technical evaluation criteria or definitive responsibility criteria, and (2) whether there had been an uncorrectable mistake in Fajardo's bid. The General Accounting Office found that since the solicitation did not require either technical proposals or submissions, the incorporated requirements were without technical evaluation criteria or definitive responsibility criteria. It also found that the mistake was not uncorrectable. It refused to review the issue of the responsibility determination stating that an affirmative responsibility determination had been performed. The General Accounting Office assumed that such responsibility determination had been made when, in fact, we now know that the same was not performed.[5] Shortly after this decision was issued, Action filed the present action in federal district court.

At the hearing, the plaintiff submitted evidence which allowed this court to make a finding that Fajardo must fail the portion of the responsibility determination requiring that the prospective contractor "have a satisfactory record of integrity and busi-

---

produced or services to be performed by the prospective contractor and subcontractors) (see 9.104–3(b));

(f) Have the necessary production, construction, and technical equipment and facilities, or the ability to obtain them (see 9.104(b));

(g) Be otherwise qualified and eligible to receive an award under applicable laws and regulations.

**4.** *See* Plaintiff's Exhibit 10 as an example of the contract solicitation documents for this kind of procurement. Part IV—General Instuctions, Section M—Evaluation Factors for Award, provides in paragraph M.2 as follows:

M.2 *BASIS FOR AWARD*

a. The low bidder for purposes of award shall be the conforming, responsive, responsible bidder offering the lowest total price for Contract Line Items (0001, 0002, 1001, 1002, 2001, 2002, 3001, 3002, 4001 and 4002 for the example shown). However, the initial award numbers will include only Contract Line Items 0001 and 0002.

b. Bids are solicited on an 'all or none' basis and FAR 52.215–16, CONTRACT AWARD—NEGOTIATION (JUL 1990) provision, Section L, is hereby modified. Failure to submit bids for all items and quantities listed shall be cause for rejection of the bid.

c. In addition of being the conforming, responsive, responsible offeror offering the lowest total price, the prospective contractor shall meet the requirements of Navy Acquisition Procedures Supplement (NAPS) 19.804–90:

(1) knowledge and understanding of the work to be performed;

(2) experience in performing requirements of similar size and scope;

(3) resources that are available (including contingent hires) or that must be acquired for contract performance;

(4) ability to comply with subcontracting limitation provisions (see FAR Clause 52–219–14) in Section I);

(5) ability to meet delivery schedules; and

(6) record of performance.

**5.** In all fairness to the General Accounting Office, an examination of the exhibits without the evidence received by us allowed one to conclude that the Navy had conducted a responsibility determination. *See* page 4 of the General Accounting Office's decision, forming part of Defendants' Exhibit 1, where it is stated:

[T]he record shows that the Navy affirmatively determined Fajardo was responsible and that the SBA also determined Fajardo was responsible and eligible for award under the section 8(a) program.

ness ethics." 48 C.F.R. § 9.104–1(d). The defendant produced no opposing evidence, declining to put on testimony by Fajardo's president or accountant, who were available. Fajardo itself, although encouraged to intervene, chose to remain outside the conflict despite its considerable economic interest.

The figures contained in the financial statements submitted to the Navy and SBA are dramatically inconsistent with figures from other sources. Figures submitted to the SBA represented Fajardo's current assets for the years 1987, 1988, and 1989 as being $419,136, $656,091, and $1,251,690, respectively. Figures for the same years submitted to the Puerto Rico Department of State, however, were $133,427, $130,768, and $424,357, respectively. The discrepancies between these two sets of figures are significant.[6] The management salaries reported to the Department of State were also at least half of those reported to the Navy and SBA. Mr. Marques, a CPA and expert witness for plaintiff, testified that calculating from the license tax for the year 1989, which is calculated as .003% of sales volume, Fajardo earned an estimated $320,000, a much different figure from that of $2,127,873 reported to the SBA as Fajardo's sales volume. There are also inconsistencies in the reporting of retained earnings during 1989, 1990, and 1991. Figures which should have appeared as retained earnings or been disbursed as dividends were plugged in as assets on the financial statements for these years.

The financial statements are questionable for other reasons as well. The certified financial statements submitted to the U.S. government by Fajardo were signed by a Josean Santos, who, although an accountant, was not a CPA. According to Puerto Rico law, 20 L.P.R.A. § 784(f), only certified public accountants may be associated with financial statements for public use. Mr. Santos used a seal that resembles the seal of a certified public accountant, and signed all of Fajardo's financial statements to SBA, an illegal act under Puerto Rico law.[7] There were other irregularities with the financial statements: an unreported bankruptcy; an unreported debt to the State Insurance Fund, and an improper mix of the cash-basis and accrual-basis accounting methods. All the returns filed with the Department of State from the years 1981 to 1990, except for 1984 and 1985, were prepared on the same date, October 17, 1991, by the same accountant;[8] the 1983 form signed by a Mr. Octavio Ramos, which was signed May 15, 1985, is identical to the 1983 form signed by Edwin Rodríguez on October 17, 1991. Many of these irregularities should have been apparent to anyone entrusted with the making of responsibility determinations.

### *Disappointed Bidders*

■ Disappointed bidders for government contracts are allowed to seek review of the agency action denying them the contract under 5 U.S.C. § 702 of the Administrative Procedure Act ("APA"). *Scanwell Laboratories, Inc. v. Shaffer*, 424 F.2d 859 (D.C.Cir.1970);[9] *see also Ulstein Mari-*

---

6. One can easily surmise the purpose behind the reporting disparity. For SBA purposes, higher figures would make the contractor look like a solid and healthy small business. For local government reporting, the lower the figures, the lower the taxes paid. One fact remains clear. It is impossible to determine from this record which are the correct figures. There is evidence tending to show that there is a possibility that both sets of figures are inaccurate. 18 U.S.C. § 1001 and 31 U.S.C. § 3802 make it an offense to make a false statement to a federal government official in his or her official capacity. 33 L.P.R.A. §§ 4392, 4591 make it a crime under the laws of Puerto Rico to file false statements with the government. The filing of inconsistent financial statements violates both federal and state law.

7. Before this fact was pointed out to the court at trial, our earlier examination of the supposedly-certified financial statements led us to believe that Mr. Santos was a CPA. The use of these statements is definitively misleading.

8. Failure to file with the Department of State is a violation of the Puerto Rico Corporations Law, 14 L.P.R.A. §§ 2301, 2302, which carries administrative and criminal penalties.

9. The doctrine established by *Scanwell* has been endorsed by Congress. 1982 USCAN 11, 13. The only remaining controversy is whether the court of claims has exclusive jurisdiction over pre-award procurement conflicts. *See J.P. Francis & Associates, Inc. v. U.S.*, 902 F.2d 740 (9th

*time, Ltd. v. U.S.,* 833 F.2d 1052 (1st Cir. 1987); *B.K. Instrument, Inc. v. U.S.,* 715 F.2d 713 (2d Cir.1983); *Coco Brothers, Inc. v. Pierce,* 741 F.2d 675 (3rd Cir.1984); *Newport News Shipbuilding and Dry Dock Co. v. U.S.,* 960 F.2d 386 (4th Cir.1992); *Hayes International Corp. v. McLucas,* 509 F.2d 247 (5th Cir.), *cert. denied* 423 U.S. 864, 96 S.Ct. 123, 46 L.Ed.2d 92 (1975); *Diebold v. U.S.,* 947 F.2d 787 (6th Cir.1991), *reh. en banc denied* 1991 WL 204461, 1992 U.S.App. LEXIS 2248 (6th Cir.1992). This review is encouraged both to provide equitable relief for bidders should any violations of the federal procurement process occur, *In re Smith & Wesson,* 757 F.2d 431 (1st Cir.1985), and to protect the public interest in the procurement process which is best represented by disappointed bidders who have both a knowledge of and investment in the proper functioning of the procurement process. *Ulstein Maritime, Ltd. v. U.S.,* 833 F.2d 1052, 1059 (1st Cir.1987); *see also Scanwell Laboratories,* 424 F.2d at 864. The standard to be applied in such a review is a species of the "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" standard found in the APA, 5 U.S.C. § 706(2)(A), and has been explicitly adopted by this circuit. *Ulstein Maritime,* 833 F.2d at 1054. This standard requires that "a disappointed bidder must show either (1) that the decision of the procurement official had no rational basis, or (2) that the decision involved a clear and prejudicial violation of applicable statutes or regulations." *Choctaw Mfg. Co. v. U.S.,* 761 F.2d 609 (11th Cir.1985), *see also Kentron Hawaii Ltd. v. Warner,* 480 F.2d 1166, 1169 (D.C.Cir.1973). In this case, plaintiff sought to prove that there was a clear and prejudicial violation of the regulations governing agency procurement as set out in 48 C.F.R. Ch. 1 §§ 1–99.

### The Award Procedure

■ Generally, deference must be given to the agency's own interpretation of its regulations, *Shoals American Industries, Inc. v. U.S.,* 877 F.2d 883 (11th Cir.1989);

however, where the regulatory scheme is not highly complex and technical, and the court is competent to review the scheme, it need not always defer to the agency action. *Choctaw Mfg.,* 761 F.2d at 619; *Superior Oil Company v. Udall,* 409 F.2d 1115, 1119 (D.C.Cir.1969). The regulatory scheme surrounding agency procurement, though complex, is easily broken down into sections comprehensible to the court. The regulations specific to responsibility determinations have been successfully reviewed by district courts in this circuit before, *Ulstein Maritime, Ltd. v. U.S.,* 646 F.Supp. 720 (D.R.I.1986), and we find they are accessible to review by this court.

The structure of the regulations governing federal acquisition dictate that when awarding a section [8](a) contract, the Navy must conform to the normal procedure of making a 48 C.F.R. § 9.104 responsibility determination. Section § 9.103(b) of 48 C.F.R., which establishes the policy for contractor qualifications, specifies that where the prospective contractor is a small business, the contracting officer, upon a finding of nonresponsibility *"shall* comply with subpart 19.6." This reference to 48 C.F.R. § 19, the section governing award of contracts to small businesses within 48 C.F.R. § 9, not only implies that 48 C.F.R. § 9 governs 48 C.F.R. § 19, but also explicitly requires that the normal procedure of a responsibility determination by the contracting officer must precede a certification of competency by the SBA. The structure of the sections implies that 48 C.F.R. § 19 is designed to supplement rather than supplant 48 C.F.R. § 9. *Celtech, Inc. v. U.S.,* 24 Cl.Ct. 269 (1991) (FAR removed all deference from procurement officers in cases concerning responsibility determination in section [8](a) contract); *Compliance Corp. v. U.S.,* 22 Cl.Ct. 193 (1990) (contracting officer should have made a nonresponsibility determination and then referred to SBA). The regulations governing an award under section [8](a) contained in 48 C.F.R. § 19 and the Navy Acquisition Pro-

---

Cir.1990). The First Circuit finds concurrent jurisdiction in that case. *Ulstein Maritime, Ltd. v. U.S.,* 833 F.2d 1052 (1st Cir.1987). This, how-

ever, is not a pre-award procurement conflict, so that presents us with no problem.

cedures Supplement are clearly intended to supplement these normal procedures. Therefore, the application of the contractor qualifications laid out in 48 C.F.R. § 9.104 cannot be avoided. These contractor qualifications require that aside from submitting the lowest bid, "[p]urchases *shall* be made from, and contracts *shall* be awarded to, responsible prospective contractors only." 48 C.F.R. § 9.103(a). The responsiveness and responsibility of the bidder must be determined before the contract is awarded. "No purchase or award *shall* be made unless the contracting officer makes an affirmative determination of responsibility." 48 C.F.R. § 9.103(b). That is the rationale behind requiring the Contracting Officer to certify that he has performed a responsibility determination in the Business Clearance Memorandum. 48 C.F.R. § 9.103(b). If the Contracting Officer should make a determination of nonresponsibility, he must refer the matter to the SBA. The SBA is authorized to make determinations binding on the Navy with respect to all elements of responsibility. 15 U.S.C. § 637(b)(7).[10] The SBA will then issue a Certificate of Competency stating that the holder is responsible with respect to all the elements of responsibility listed in 48 C.F.R. § 9.104. 48 C.F.R. § 19.601(a).[11] If, however, the Contracting Officer of the contracting agency does not make a finding of nonresponsibility, the SBA limits its examination of the bidder to a certification of eligibility. This consists of ascertaining whether the prospective contractor conforms to SBA criteria of eligibility, such as (1) whether the firm has the appropriate SIC code; (2) whether the firm is of the required size; (3) whether the firm is in a developmental or transitional phase; (4) whether the financial statements are current; and (5) whether the firm meets Walsh–Healey criteria. *See* Plaintiff's Exhibit 2 at 22. These criteria are drawn from the regulations. 48 C.F.R. § 19.805–

2(c). They constitute a checklist of basic information already available in SBA files, and in no way constitute any independent investigation of the business for purposes of a responsibility determination.

Mr. Whisner, the Contracting Officer for the contract in question, testified that at the time of the award he was under the impression that in a section [8](a) procurement it was the responsibility of the SBA to conduct the responsibility determination and for that reason, he made no independent responsibility determination. He apparently assumed that the certification of eligibility provided by the SBA fulfilled the function of a responsibility determination. On October 10, 1991, in a conversation with Mr. Garcia Ramis, the president of Action, Mr. Whisner stated that the Navy had not conducted a responsibility analysis and that it was not required to conduct such an analysis because that was the responsibility of the SBA in a section [8](a) procurement. Sometime later, Mr. Whisner became aware that the Navy must make a pre-award determination that all prospective contractors conform to the contractor qualifications in 48 C.F.R. § 9. In an affidavit to the General Accounting Office, Mr. Whisner wrongfully misrepresented that a responsibility determination was performed by Mr. Aponte in a memo dated October 21, 1991.

■ The government argues that Mr. Aponte's memo using Navy Acquisitions Procedures Supplement section 9.804–90 constitutes the required pre-award responsibility determination. However, this informal survey does not satisfy the requirements under 48 C.F.R. § 9.104, which is the appropriate responsibility determination standard. At best, the "informal survey" conducted by Mr. Aponte is a "cursory review" of the sort found unacceptable by the court in *Ulstein:* "Although a subjective responsibility determination involves

---

**10.** To certify to Government procurement officers, and officers engaged in the sale and disposal of Federal property, with respect to the competency, as to capacity and credit, of any small-business concern or group of such concerns to perform a specific Government contract."

**11.** Certificates of competency are generally held to be dispositive, except where bidders are determined not to be qualified for reasons such as lack of integrity. 37 Comp.Gen. 676 (1958).

consideration of a number of factors and permits flexibility on the part of the reviewing agent, the factors must at least be seriously and meaningfully evaluated or the regulations have been effectively ignored." *Ulstein,* 646 F.Supp. at 737. Mr. Aponte contacted Mr. Luis Rodríguez, contract negotiator at SBA, as part of his responsibility determination. Although Mr. Rodriguez had ongoing knowledge of Fajardo's financial condition as a contract negotiator for the SBA, the most recent review he had done was for the certification of eligibility. The certification of eligibility is nothing more than a checklist of whether the necessary documents needed to continue enjoying SBA benefits are current. The certification that the financial statements are current means nothing more than that the firm had submitted the required forms to SBA recently. Therefore, the information Mr. Aponte got from Mr. Rodriguez was limited. Regardless of the nature of the information acquired by Mr. Aponte from the SBA, the regulations specifically require two separate evaluations of a firm's responsibility, one by the contracting agency and one by the SBA. The Navy, as contracting agency, cannot abdicate its obligation to conduct a responsibility determination. It cannot delegate such determination to the SBA. We find that the memo entitled "Determination of Responsibility" performed by Mr. Aponte, the Navy Contract Manager, does not constitute the required responsibility determination. In light of the serious questions about Fajardo's financial condition and integrity brought to light by the plaintiff during these proceedings, we can only rule that the Navy failed to conduct the responsibility determination and that such failure was material and not subject to correction by resorting to another agency's review.

### The General Accounting Office Review

█ Under the statute governing protests of procurement decisions to the General Accounting Office, the agency "may determine whether the solicitation, proposed award or award complies with statute and regulation." 31 U.S.C. § 3554(b)(1). The General Accounting Office role in resolving conflicts engendered by the procurement process is important and agencies defer to its findings. *Honeywell, Inc. v. U.S.,* 870 F.2d 644 (Fed.Cir. 1989). Its interpretation of regulations is entitled to considerable deference by courts as well. *Stay, Inc. v. Cheney,* 940 F.2d 1457 (11th Cir.1991) *cert. denied* ⸺ U.S. ⸺, 112 S.Ct. 973, 117 L.Ed.2d 138 (1992); *see also Shoals American Industries, Inc. v. U.S.,* 877 F.2d at 888. However, courts have found that where there has been a General Accounting Office decision, as there has in this case, they may "regard the assessment as an expert opinion, which [they] should prudently consider but to which [they] have no obligation to defer." *Delta Data Systems Corp. v. Webster,* 744 F.2d 197, 201 (D.C.Cir.1984). The *General Accounting Office* decision does not interfere with the court's ability to exercise the scope of its jurisdiction in these matters. Here, the General Accounting Office found that "[t]he record shows that the Navy affirmatively determined Fajardo was responsible" and it refused to "review a protest against affirmative determinations of responsibility, which are largely a question of business judgment, absent a showing of possible fraud or bad faith on the part of contracting officials. 4 C.F.R. § 21.-3(m)(5)." *Action Service Corporation,* B–246413, March 9, 1992.

█ The government echoes this argument, maintaining that since affirmative determinations of responsibility are determinations which require the considerable discretion of the contracting officer, *Keco Industries, Inc. v. U.S.,* 492 F.2d 1200, 1205–06 (Ct.Cl.1974), they may not be overturned absent allegations of fraud or bad faith, even if the decision is negligent. *Trilon Education Corp. v. U.S.,* 578 F.2d 1356 (Ct.Cl.1978).[12] Aside from the fact that this line of cases comes from a Court of Claims context, where only pre-award com-

---

**12.** This restrictive standard of review, if anything, only increases the burden on the Contracting Officer to perform his job thoroughly, and on the court to vigilantly assure that the regulations are indeed followed.

plaints are considered, *Ulstein Maritime,* 833 F.2d at 1058; *see also In re Smith & Wesson,* 757 F.2d at 434, those cases are irrelevant here since no responsibility determination was performed. Mr. Whisner, both in his testimony and in the affidavit submitted to the General Accounting Office in the Navy report, admitted that he had not performed a responsibility determination. Mr. Whisner's representation in the business clearance memo on September 21, 1991 that a responsibility determination had been performed was signed one month before the "determination of responsibility" memo dated October 21, 1991. He never signed such memo. Finally the "determination of responsibility" memo failed to rise to the level of a responsibility determination. Here there was no responsibility determination and that issue was not directly reviewed by the General Accounting Office. We feel confident in finding that the Navy's failure to perform a responsibility analysis constitutes clear error. That this error is prejudicial to plaintiff is apparent: Action was the second lowest bidder and had Fajardo been found nonresponsible by the Navy and failed to receive a certificate of competency from the SBA, Action would have had a chance to win the contract.

### Remedy

■ We now turn to the type of remedy which may be granted in this case. The First Circuit has found that district courts have the power to issue both declaratory and injunctive relief against the Navy. *Ulstein Maritime,* 833 F.2d at 1059. Looking at the remedies the General Accounting Office is empowered to recommend as a guide,[13] we note that while the district court is not specifically empowered to exercise this range of options, the General Accounting Office remedies reflect the type of equitable remedies which have been exercised by the courts. *Ulstein Maritime, Ltd. v. U.S.,* 646 F.Supp. 720 (D.R.I.1986) (court ordered the agency to terminate the contract and award to the next lowest responsive and responsible bidder); *Blue Cross & Blue Shield, Inc. v. United States Dept. of Health & Human Services,* 718 F.Supp. 80 (D.D.C.1989) (with the objective of assuring "that the government obtains the most advantageous contracts by complying with the procedures which Congress and applicable regulations have provided" the court put the disappointed bidder in the economic position it would have occupied but for the error); *Applications Research Corp. v. Naval Air Development Center,* 752 F.Supp. 660 (E.D.Pa.1990) (court would have jurisdiction to set aside contract and award to plaintiff with proper factual basis); *Mark Dunning Industries, Inc. v. Cheney,* 726 F.Supp. 810 (M.D.Ala.1989) *aff'd.,* 934 F.2d 266 (11th Cir.1991) (remanded to Army for factual determination on issue). Since in determining a remedy we bear the burden of balancing the interests of justice with the restraint traditionally exercised by the courts when reviewing agency actions, we must determine how we can correct the violations and still avoid unnecessary intrusion. *Newport News Shipbuilding and Dry Dock Co. v. U.S.,* 1992 U.S.App. LEXIS 4681. The governing principle in fashioning a remedy in procurement cases appears to be to attempt to place the disappointed bidder in the position it would have been in but for the error. Where the error concerns failure to properly conduct a responsibility determination, the remedy should require the agency to conduct a proper determination.[14] There-

---

**13.** 31 U.S.C. § 3554(b)(1).

    (A) refrain from exercising any of its options under the contract;
    (B) recompete the contract immediately;
    (C) issue a new solicitation;
    (D) terminate the contract;
    (E) award a contract consistent with the requirements of such statute and regulation;
    (F) implement such other recommendations as the Comptroller General determines to be necessary in order to promote compli-

ance with procurement statutes and regulations; or
    (G) implement such other recommendations as the Comptroller General determines to be necessary in order to promote compliance with procurement statutes and regulations.

**14.** In *Ulstein,* the court voided the contract and directed the award to the next lowest bidder. In that case there were two errors: (1) the Certificate of Competency issued by the SBA

fore, in this case, under normal circumstances, since there was no responsibility determination, the proper remedy would be to require the Navy to perform a responsibility determination. However, this court has made findings which would be incompatible with a finding of responsibility by the Navy or a certification of competency by the SBA. Fajardo's looseness in reporting its finances, and the potential violations of federal and local law associated with these actions, would not permit a finding of responsibility. Both 48 C.F.R. § 9.104 and 48 C.F.R. § 19.601(a),[15] the applicable regulations, require a finding of integrity, a finding incompatible with the evidence before this court.

▮▮▮▮ The evidence used to make a determination of nonresponsibility for lack of integrity must be substantial and consist of more than suspicions and allegations. *General Painting Comp. Inc.*, 1985 WL 53542, 1985 U.S.Comp.Gen. LEXIS 255; *P.T. & L. Construction Co., Inc.*, 1975 WL 11583, 55 Comp.Gen. 343 (1975). The findings here indicate breaches of business ethics which are as or more serious than those generally found by the contracting agency to constitute a lack of integrity. *Standard Tank Cleaning Corp.*, 1992 WL 5586, 1992 U.S.Comp.Gen. LEXIS 7 (multiple citations by the Environmental Protection Agency); *Garten- und Landschaftsbau GmbH Frank Mohr*, 1990 WL 277689, 1990 U.S.Comp.Gen. LEXIS 189 (continued employment of individual who lied to Army Criminal Investigations Command about false claims); *River Equipment Corp.*, 1987 WL 102593, 1987 U.S.Comp.Gen. LEXIS 738 (nondisclosure of outstanding obligations); *Interwaste Services Comp.*, 1986 WL 64120, 1986 U.S.Comp.Gen. LEXIS 425 (performance deficiencies in past contracts); *General Painting Comp., Inc.*, 1985 WL 11583, 1985 U.S.Comp.Gen. LEX-

IS 255 (failure to pay minimum wage). While a finding of lack of integrity has serious business implications which raise a due process right, *Old Dominion Dairy v. Sec. of Defense*, 631 F.2d 953 (1980), that right is protected if the party has notice and an opportunity to respond. In this case Fajardo was given notice of plaintiff's charges and urged by the court to intervene and respond to those charges. If either the Navy or the SBA were to find Fajardo responsible, such a finding would have no rational basis. Fajardo could never be a responsible bidder under the regulations.

*Conclusion*

The Navy is ordered to reverse its award of the contract for guard services at Vieques Island U.S. Naval Facilities to Fajardo. The Navy is further directed to award the contract to the next lowest responsive and responsible bidder.

IT IS SO ORDERED.

---

had failed to take into account a certain clause, and (2) the bidder failed to qualify under the Walsh–Hartley Public Contract Act. The court said that if the only error had been in the issuing of the Certificate, which was a part of the responsibility analysis, the appropriate remedy would have been to require a repeat of the responsibility analysis. *Ulstein Maritime*, 646 at 741 n. 24.

**15.** FAR § 19.601(a):

A Certificate of Competency is the certificate issued by the Small Business Administration (SBA) stating that the holder is responsible (with respect to all elements of responsibility, including but not limited to capability, competency, capacity, credit, integrity, perseverance, and tenacity) for the purposes of receiving and performing a specific government contract.