**ACTION SERVICE CORPORATION,**
**Plaintiff,**

**v.**

**Lawrence H. GARRETT, Secretary of the Navy, and Patricia Saiki, Administrator, Small Business Administration, Defendants.**

**Civ. No. 92–1377 (JAF).**

United States District Court,
D. Puerto Rico.

July 21, 1992.

Frank M. Rapoport, Pepper Hamilton & Scheetz, Philadelphia, Pa., Eric A. Tulla,

---

Rivera Tulla & Ferrer, Hato Rey, Puerto Rico, Benjamin N. Thompson, Dunn, N.C., for plaintiff.

Fidel A. Sevillano del Rio, Asst. U.S. Atty., Daniel Lopez Romo, U.S. Atty., San Juan, Puerto Rico, for defendants.

## OPINION AND ORDER

FUSTE, District Judge.

Defendants have moved for reconsideration of our decision, published at 790 F.Supp. 1188 (D.P.R.1992), under Fed. R.Civ.P. 59(e). This motion, if filed within ten days of the initial judgment, allows the court to amend or alter its judgment. Defendants ask the court to reconsider the order which required the Navy to both withdraw its award of a contract for security services on Vieques Island Naval Facilities to Fajardo Private Detectives and Security Guards Corp. ("Fajardo") and proceed to award the contract to the next lowest responsible and responsive bidder. We had found that the award of the Navy contract to Fajardo was in violation of the applicable regulations governing federal acquisitions. *See Ulstein Maritime, Ltd. v. U.S.*, 833 F.2d 1052, 1057 (1st Cir.1987); *In re Smith & Wesson*, 757 F.2d 431 (1st Cir.1985). First Circuit case law clearly establishes that in the area of procurement contracts, a government agency may not award a contract in violation of applicable statutes and regulations; if it does, the award is invalid. *Smith & Wesson v. U.S.*, 782 F.2d 1074, 1078 (1st Cir.1986). In this case, the regulations applied by the court were the Federal Acquisition Regulations ("FAR"), found in 48 C.F.R. § 9.1, which apply "to all acquisitions as defined in part 2 of the FAR, except where expressly excluded." 48 C.F.R. § 1.103. The services requested by the Navy in this case fall within the definition in 48 C.F.R. § 2.1.[1] Under 48 C.F.R. § 9.1, it is the contracting officer's obligation to conduct a responsibility determination. By his own admission, the contracting officer in this case failed to make this determination. On that basis, we found the decision to award the contract to Fajardo was invalid.

### The Responsibility Determination

■ In their motion for reconsideration, the defendants have brought to the court's attention a recent D.C. Circuit case dealing with solicitations involving section 8(a) of the Small Business Act. 15 U.S.C. § 637(a). *DAE Corp. v. Engeleiter*, 958 F.2d 436 (D.C.Cir.1992). The court in that case found that "the SBA, not the procuring agency's contracting officer, assesses the responsibility of the prospective contractor." *Id.* at 439. This language places in question whether 48 C.F.R. § 9.1 can be applied to a section 8(a) solicitation. Our decision to apply 48 C.F.R. § 9.1 relied upon the opinion in *Celtech, Inc. v. U.S.*, 24 Cl.Ct. 269 (Cl.Ct.1991), which was vacated shortly after the decision of the D.C. Circuit in *DAE v. Engeleiter*. *Celtech, Inc. v. U.S.*, 25 Cl.Ct. 368 (Cl.Ct.1992). In reevaluating the legal basis for relying upon the Federal Acquisition Regulations to determine the appropriate procedure in this case, we must decide whether to apply *DAE v. Engeleiter* to our case. While that court's interpretation of the plain language of the statute is correct—a section 637(b)(7) certification of competency is confined to solicitations under section 8(b), *see* 48 C.F.R. § 19.6—our case does not concern the performance of a certification of competency. We are concerned with determining which agency is accountable for performing a responsibility determination for a section 8(a) solicitation. After careful review, we find that *DAE v. Engeleiter* does not apply to our case.

There are two types of section 8(a) solicitations: Sole source and competitive. The court in *DAE v. Engeleiter* limited its holding to sole source contracts. The argu-

---

**1.** Acquisition is defined in 48 C.F.R. § 2.101 as: [T]he acquiring by contract with appropriated funds of supplies or services (including construction) by and for the use of the Federal Government through purchase or lease, whether the supplies or services are already in existence or must be created, developed, demonstrated, and evaluated. Acquisition be-

gins at the point when agency needs are established and includes the description of requirements to satisfy agency needs, solicitation and selection of sources, award of contracts, contract financing, contract performance, contract administration, and those technical and management functions directly related to the process of fulfilling agency needs by contract.

ment in *DAE v. Engeleiter* is that the statutes governing section 8(a) solicitations "expressly exclude" sole source solicitations from the Federal Acquisition Regulations. 15 U.S.C. § 637(a)(16)(A)(i). Aside from this statutory argument, since the section 8(a) program was designed to allow the SBA to contract with an agency and then subcontract with the small businesses participating in its program, it is logically appealing that the SBA, as the contracting entity, should do a responsibility analysis. In practice, however, the procuring agency and the disadvantaged small business normally deal directly with one another. John Cibinic, Jr. & Ralph C. Nash, Jr., *Formation of Government Contracts* at 962 (2d ed. 1986). As a result, in the case of sole source awards, both the SBA and the contracting agency have substantial contact with the small business.

There is ample evidence to suggest that competitive contracts should be treated differently. Competitive awards are structured differently. With the Business Development Reform Act of 1988, Congress amended the contracting process for section 8(a) solicitations in an attempt to prevent the abuses that had surfaced as a result of the scandal surrounding the Wedtech Corporation. One amendment designed to ensure that there is no fraud in contracts involving large sums of money was to require that all solicitations valued over $5 Million be competitive. 15 U.S.C. § 637(a)(1)(D)(i)(II). While the SBA provides the contracting agency with a list of eligible firms under 48 C.F.R. § 19.805-2(b), it does not have any other role prior to the bid competition.[2] Since the purpose of the competition is to make the bid procedure as realistic as possible within the protective confines of section 8(a) program eligibility, the contracting agency deals directly with the small businesses competing for the award. Structurally, and from a policy perspective, it makes little sense for the SBA to do a responsibility determination where the bid is competitive.[3]

Aside from this gloss on why the policy concerns behind competitive bidding place the burden of performing a responsibility determination on the contracting agency, the regulations themselves specifically state that "[t]he procuring agency shall evaluate offers pursuant to the evaluation criteria in the solicitation and the applicable FAR provisions," 13 C.F.R. § 124.311(f)(3). They require that:

> [c]ompetitions among eligible 8(a) participants shall be conducted by the procuring agencies in accordance with the Federal Acquisition Regulation (FAR). Such competitions shall be representative of competitions which are the normal practice in the relevant industries.

13 C.F.R. § 124.311(f)(1). These regulations clearly intend that the Federal Acquisition Regulations apply in a competitive bid situation. Therefore, the guidelines for responsibility determinations found in 48 C.F.R. § 9.1 of the Federal Acquisition Regulations should be applied to competitive section 8(a) solicitations.[4] The Navy and not the SBA had the duty to find the competitive best bidder responsible.

### The Remedy

■ The defendant also expresses concern about the breadth of the court's reme-

---

2. The SBA does certify the firm's eligibility for the section 8(a) program after receiving a list of offerors ranked in order of their standing for award, but this has little to do with determining the firm's responsibility. The eligibility determination looks primarily at the offeror's qualification for the section 8(a) program. 48 C.F.R. § 19.805-2(c)(1).

3. Indeed, we question whether, given that the contracting agency still negotiates with the section 8(a) firm to some extent even in a sole source award, 48 C.F.R. § 19.804-3(b) & § 19.-808-1, the contracting officer should not make an independent responsibility determination prior to *all* contract awards to small businesses in the section 8(a) program. The regulations

state that "[w]hen it is in the Government's interest to do so, the contracting officer may directly determine a prospective contractor's responsibility." 48 C.F.R. § 9.104-4(b).

4. Our concern is that neither agency seems to have performed the responsibility determination required by the regulations, whether contained in the Federal Acquisition Regulations or the regulations governing the Small Business Administration. 13 C.F.R. §§ 124.308 & 124.-313. Our desire is to avoid abuse of the section 8(a) program. This cannot be accomplished without proper investigation of the firm's business integrity by some person within the contracting process. We feel this determination is

dy. This remedy, however, went no further than as allowed by the First Circuit case law. The Court of Appeals has decided that "a court may order that a contract be awarded when 'it is clear that, but for the illegal behavior of the agency, the contract would have been awarded to the party asking the court to order the award.'" *Ulstein Maritime, Ltd. v. U.S.*, 833 F.2d at 1058 (quoting *Delta Data Systems Corp. v. Webster*, 744 F.2d 197, 204 (D.C.Cir.1984)). This standard allows the court a great deal of flexibility in remedying a violation, even to the point of allowing the court to step completely into the shoes of the agency by directly awarding the contract. In this case, the court's remedy was actually the incorporation of two separate determinations: (1) the award was set aside because the agency failed to follow its own regulations, and (2) Fajardo was disqualified as a bidder because the existent facts would make a finding of responsibility by the contracting officer arbitrary and capricious. The defendant has no quarrel with the first of these findings. The defendant argues that the second finding interferes with the discretion accorded the contracting officer in making a responsibility determination.

 In response to defendants' argument, we first point out that the case law has held that a disappointed bidder is "given standing to bring such suits as a 'private Attorney General' in order to further the public, as well as his own, interest." *Ulstein Maritime, Ltd.*, 833 F.2d at 1059 (quoting *Scanwell Laboratories, Inc. v. Shaffer*, 424 F.2d 859 (D.C.Cir.1970)). In protecting the public interest, it is the court's role both to ensure that agency procedures are properly followed and to investigate any allegations of abuse. Second, while we acknowledge that a finding of responsibility is a discretionary finding involving the balancing of many factors,

discretion is necessary only for those factors where the contracting officer is exercising his business judgment. John Cibinic, Jr. & Ralph C. Nash, Jr., *Formation of Government Contracts* at 241–42 (1986). Not all portions of the determination are equally discretionary. The portion of this analysis which involves a determination of a firm's integrity has no relation to business judgment. A firm either has integrity or it does not. Therefore, we find as a matter of law that whether or not a firm has integrity is not a discretionary determination. For that reason, the court was careful to offer Fajardo the opportunity to participate in the trial. Fajardo refused the offer.[5]

Integrity is generally defined as exhibiting "probity, honesty and uprightness." 48 Comp.Gen. 769 (1969). Fajardo has not exhibited these qualities. In this case, the falsification of information involving Fajardo's finances so undermines the procurement process—which appears to rely heavily upon the truth of the documents submitted to it—that we were compelled to find that Fajardo did not have integrity as required by 48 C.F.R. § 9.104–1(d). Since the contracting officer could not find Fajardo responsible once the court found that it lacked integrity, given that the determination of integrity is not discretionary, any attempt to perform a responsibility determination would be futile. We fashioned a remedy which incorporated these findings while disrupting the bidding procedures as little as possible.

### Conclusion

Defendants' motion for reconsideration is DENIED.

IT IS SO ORDERED.

most appropriately situated with the contracting agency, which presumably functions most effectively following its normal bid procedures.

**5.** The denial of a contract based on charges of fraud or dishonesty must meet the minimum due process requirements of notice and opportunity for a hearing. *Boddie v. Connecticut,* 401

U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); *Old Dominion Dairy Products, Inc. v. Secretary of Defense,* 631 F.2d 953 (D.C.Cir.1980). Here, Fajardo was explicitly urged to intervene; it retained counsel and chose to remain outside of the conflict.